810 A.2d 457

ATTORNEY GRIEVANCE COMMISSION OF MARYLAND,

v.

Alan Edgar HARRIS.

Misc. (Subtitle AG) No. 24, Sept. Term, 2001.

Court of Appeals of Maryland.

Nov. 6, 2002.

512

Melvin Hirshman, Bar Counsel and Glenn M. Grossman, Deputy Bar Counsel for the Attorney Grievance Commission of Maryland, for petitioner.

Benjamin Lipsitz, Baltimore, for respondent.

Argued before BELL, C.J., and ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL and BATTAGLIA, JJ.

CATHELL, Judge.

On September 24, 2001, the Attorney Grievance Commission of Maryland, petitioner, by Melvin Hirshman, Bar Counsel, and Glenn M. Grossman, Deputy Bar Counsel, filed [1] a petition for disciplinary action against Alan Edgar Harris, respondent, for multiple violations of the Maryland Rules of Professional Conduct (MRPC). The petition alleged that respondent, based on his representations of Emily Lewis and Preston Lawrence Henderson, had violated MRPC 1.1, 1.3, 1.4(a) and (b), 1.5(a), (b) and (c), 1.7(b) and (c), 1.8(a) and (j), 1.9(a) and (b), 3.2, and 8.4(a), (c) and (d).[2]

---

**1.** Petitioner filed a petition with this Court initiating disciplinary proceedings against Alan Edgar Harris pursuant to Maryland Rule 16–709(a), which states that "[c]harges against an attorney shall be filed by the Bar Counsel acting at the direction of the Review Board." This case arose and was processed under the attorney grievance rules in effect at that time, as they were stated in the 2001 edition of the Maryland Rules. Thus, we refer to those relevant rules as they existed prior to July 1, 2001.

**2.** The relevant provisions of the MRPC state:
"**Rule 1.1. Competence.**
A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.
. . .
"**Rule 1.3. Diligence.**

A lawyer shall act with reasonable diligence and promptness in representing a client.

**"Rule 1.4.   Communication.**

(a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

**"Rule 1.5.   Fees.**

(a) A lawyer's fee shall be reasonable.   The factors to be considered in determining the reasonableness of a fee include the following:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services;  and

(8) whether the fee is fixed or contingent.

(b) When the lawyer has not regularly represented the client, the basis or rate of the fee shall be communicated to the client, preferably in writing, before or within a reasonable time after commencing the representation.

(c) A fee may be contingent on the outcome of the matter for which the service is rendered, except in a matter in which a contingent fee is prohibited by paragraph (d) or other law.   The terms of a contingent fee agreement shall be communicated to the client in writing.  The communication shall state the method by which the fee is to be determined, including the percentage or percentages that shall accrue to the lawyer in the event of settlement, trial or appeal, litigation and other expenses to be deducted from the recovery, and whether such expenses are to be deducted before or after the contingent fee is calculated.   Upon conclusion of a contingent fee matter, the lawyer shall provide the client with a written statement stating the outcome of the matter, and, if there is a recovery, showing the remittance to the client and the method of its determination. . . .

. . .

**"Rule 1.7.   Conflict of interest:  General rule.**

. . .

(b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:

On September 27, 2001, pursuant to Maryland Rule 16–752,[3] this Court transmitted the matter to Judge Marcella A. Hol-

---

(1) the lawyer reasonably believes the representation will not be adversely affected; and

(2) the client consents after consultation.

(c) The consultation required by paragraphs (a) and (b) shall include explanation of the implications of the common representation and any limitations resulting from the lawyer's responsibilities to another, or from the lawyer's own interests, as well as the advantages and risks involved.

"**Rule 1.8. Conflict of interest: Prohibited transactions.**

(a) A lawyer shall not enter into a business, financial or property transaction with a client unless:

(1) the transaction is fair and equitable to the client; and

(2) the client is advised to seek the advice of independent counsel in the transaction and is given a reasonable opportunity to do so.

. . .

(j) A lawyer shall not acquire a proprietary interest in the cause of action or subject matter of litigation the lawyer is conducting for a client, except that the lawyer may:

(1) acquire a lien granted by law to secure the lawyer's fee or expenses; and

(2) subject to Rule 1.5 contract with a client for a reasonable contingent fee in a civil case.

"**Rule 1.9. Conflict of interest: Former client.**

A lawyer who has formerly represented a client in a matter shall not thereafter:

(a) represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation; or

(b) use information relating to the representation to the disadvantage of the former client except as Rule 1.6 [confidentiality of information] would permit with respect to a client or when the information has become generally known.

. . .

"**Rule 3.2. Expediting litigation.**

A lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client.

. . .

"**Rule 8.4. Misconduct.**

It is professional misconduct for a lawyer to:

(a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;

. . .

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

(d) engage in conduct that is prejudicial to the administration of justice. . . ." [Alteration added.]

3. Specifically, Maryland Rule 16–752 states, in relevant part:

land of the Circuit Court for Baltimore City to conduct a hearing and to make findings of fact and conclusions of law.[4]

On March 1 and 4, 2002, an evidentiary hearing was held before the hearing judge. On June 17, 2002, Judge Holland issued her Memorandum of Findings of Fact and Conclusions of Law and found by clear and convincing evidence that respondent violated MRPC 1.1, 1.3, 1.4(a) and (b), 3.2 and 8.4(a) in the Lewis matter and MRPC 1.5, 1.7, 1.8(a) and (j), and 8.4(a) in the Henderson matter. The hearing judge further concluded that respondent did not violate MRPC 8.4(d) in the Lewis matter and did not violate MRPC 1.9 and 8.4(c) and (d) in the Henderson matter. The record was then transferred from the hearing judge to our Court for oral argument. Both petitioner and respondent, pursuant to former Maryland Rule 16–711(b)(2),[5] filed with this Court exceptions to the hearing judge's Memorandum of Findings of Facts and Conclusions of Law.[6]

---

"**Rule 16–752. Order designating judge.**

    (a) **Order.** Upon the filing of a Petition for Disciplinary or Remedial Action, the Court of Appeals may enter an order designating a judge of any circuit court to hear the action and the clerk responsible for maintaining the record. The order of designation shall require the judge, after consultation with Bar Counsel and the attorney, to enter a scheduling order defining the extent of discovery and setting dates for the completion of discovery, filing of motions, and hearing."

**4.** Former Maryland Rule 16–711(a) stated that "[a] written statement of the findings of fact and conclusions of law shall be filed in the record of the proceedings and copies shall be sent to all parties."

**5.** Former Maryland Rule 16–711(b)(2) stated that "[w]ithin 15 days after the filing of the record in the Court of Appeals, the attorney or the Bar Counsel may file in the Court of Appeals exceptions to the findings and conclusions and may make recommendations respecting the disciplinary sanction to be imposed...."

**6.** In Respondent's "EXCEPTIONS TO HEARING JUDGE'S 'MEMORANDUM OF FINDINGS OF FACTS AND CONCLUSIONS OF LAW,'" we note that he "excepts to the hearing judges conclusions that he violated Rule[] ... 1.9 ... with respect to the *Henderson* matter." Judge Holland found no violation of Rule 1.9 with respect to the Henderson matter by respondent because of the rule's inapplicability to the facts of this case and petitioner does not except to her conclusion of no violation; therefore, we shall not discuss Rule 1.9. Additionally,

## I.  Facts

Respondent was admitted to the Bar of Maryland on June 10, 1960 and maintains his practice of law in his office located in Baltimore City. The Petition for Disciplinary Action filed in this case was based on two complaints, BC Docket No. 2000–120–4–2, Complaint of Emily Lewis and BC Docket No. 2000–282–4–2, Complaint of Preston Lawrence Henderson.  Judge Holland's Findings of Fact and Conclusions of Law [7] are as follows:

> "The testimony offered at the hearing together with the Exhibits received established by clear and convincing evidence the following facts pertinent to the Petition.

### BACKGROUND FACTS

> "Respondent is an attorney licensed to practice law in the State of Maryland since 1960.  He is a solo practitioner with his principal office located at 110 Saint Paul Street, Baltimore, Maryland 21201.  Respondent has represented between fifteen and twenty thousand clients in automobile negligence cases.

> "Respondent was previously sanctioned for violation of the Maryland Rules of Professional Conduct.  Respondent has also previously appeared before this court on January 25, 2001, for a hearing on a Petition for Disciplinary Action filed by the Attorney Grievance Commission.  As a result of that hearing, Respondent was found to have violated Maryland Rules of Professional Conduct:  1.3, 1.4(a), 1.4(b), 1.16(a)(2) and 3.2.

---

petitioner alleged respondent also violated Rule 8.4(c) with respect to the Henderson matter.  Judge Holland found no violation of this provision of Rule 8.4 in this Henderson matter and neither respondent nor petitioner except to Judge Holland's conclusion of no violation of Rule 8.4(c);  therefore, we shall not discuss Rule 8.4(c).

7.  In the beginning pages of this opinion we quote the provisions of the MRPC involved in the present case and, throughout this opinion, in the interest of brevity, we will generally discuss the MRPC provisions involved, instead of rewriting the text of the MRPC.

"This Petition raises claims of misconduct by Respondent regarding his representation of two former clients, Emily Lewis and Preston Lawrence Henderson. Respondent represented Emily Lewis in the case of *Lewis, et al. v. Mihialovici, et al;* filed in the District Court of Maryland for Baltimore City on February 7, 1992, case number 470592. Respondent represented Preston Henderson in the case of *State Farm Mutual v. Preston Henderson,* filed in the Circuit Court of Maryland for Baltimore City on November 27, 1996, case number 24–C–96–204052 and *Henderson v. Ashley Lane Designs, Inc., et al.,* also filed in the Circuit Court of Maryland for Baltimore City on January 20, 1999, case number 24–C–99–000254.

### *FACTS RELEVANT TO LEWIS, et al. V. MIHIALOVICI, et al.*

"Emily Lewis, (hereinafter 'Ms. Lewis'), retained the Respondent to recover damages for injuries sustained by her minor son, Michael Lewis (hereinafter, 'Michael'), as a result of his being struck by a taxicab on or about September 12, 1989. Also on this date, Ms. Lewis signed a retainer agreement provided by Respondent. The Respondent filed suit on behalf of Michael against the driver and the taxicab company on February 7, 1992, in the District Court of Maryland for Baltimore City, *Lewis, et. Al. v. Mihialovici, et al.,* case number 470592.

"Respondent was initially unable to serve the taxicab company or the driver. The driver, John R. Mihialovici was served with process on or about March 4, 1995. The taxicab company was never served.

"In a letter dated June 18, 1993, Respondent notified Ms. Lewis that the trial in this case was scheduled for September 3, 1993. Also in this letter, Respondent explained that he had not served the defendant and if he could not serve the defendant before September 3, the trial would be rescheduled. Although Ms. Lewis and Michael Lewis did appear in court on September 3, Respondent did not.

"The trial was rescheduled for April 20, 1995. Respondent did not appear on this day. The trial was rescheduled again for July 13, 1995. On July 13, neither the Lewis[ ] [family] nor Respondent appeared. As a result, the case was dismissed by Judge Gale R. Caplan. On August 4, 1995, the Respondent filed a Motion to Vacate the Order of Dismissal. On August 15, 1995, that Motion was denied by Judge Alan M. Resnick because the Respondent failed to sign the Motion.

"On September 25, 1995, the Respondent filed another Motion to Vacate the Order of Dismissal and that Motion was denied by Judge Gale R. Caplan on October 6, 1995. On February 25, 1997, the case against the taxicab company was dismissed pursuant to Maryland Rule 3–507 [for lack of prosecution].

"Respondent alleged that Michael Lewis discharged him in September of 1995. He also alleged that Michael Lewis threatened to sue him. Respondent suggested that Michael hire another attorney. Respondent never withdrew his appearance nor did he communicate to the Lewis[ ] [family] that he was no longer willing to represent them.

*FACTS RELEVANT TO STATE FARM MUTUAL v. PRESTON HENDERSON & HENDERSON v. ASHLEY LAYNE DESIGNS, INC. et al.*

"The Respondent represented Mr. Henderson in connection with a Chapter 7 bankruptcy case in or about 1995 to 1996. Respondent has known Mr. Henderson and members of his family for thirty-five to forty years.

"In or about August 1996, Mr. Henderson lived at 2240 Keyworth Avenue in Baltimore City and while he resided there, that property was subject to foreclosure. Respondent purchased the property at a foreclosure sale for $17,000.00 and told Mr. Henderson that he would allow him to remain at the property.

"There was no written agreement between Mr. Henderson and Respondent regarding Mr. Henderson's re-

purchase of the property. There was also no written agreement regarding Mr. Henderson's obligations with respect to rent, taxes or other expenses related to the property.

"In 1996, Mr. Henderson was involved in an automobile accident and was sued for damages. The Respondent represented Mr. Henderson in the resulting lawsuit, i.e. *State Farm Mutual v. Preston Henderson.* A judgment in favor of State Farm Mutual for approximately $11,935.00 was entered on or about September 3, 1997.

"On September 4, 1997, Respondent filed suit against Mr. Henderson in the District Court of Maryland for Baltimore City seeking back rent. On September 11, 1997, a default judgment was entered against Mr. Henderson. Respondent was awarded a judgment in the amount of $7,200.00. On or about September 15, 1997, Respondent filed a Writ of Garnishment of Wages and Mr. Henderson's wages were later garnished.

"Sometime in 1997, while employed by Ashley Layne Designs, Inc. as a window treatment designer, Mr. Henderson sought Respondent's advice concerning sexual harassment at his place of employment. Mr. Henderson continued his employment with Ashley Layne Designs, Inc. until sometime in March of 1998. Mr. Henderson was discharged at that time and retained Respondent in connection with his claim for unemployment compensation. He also retained Respondent to represent him on his claims of sexual harassment and abusive discharge against his former employer.

"On January 20, 1999, Respondent filed suit against Ashley Layne Designs, Inc. for sexual harassment and for abusive discharge in the Circuit Court for Baltimore City, case number 24–C–99–000254. In April of 1999, after negotiation between the parties, an[ ] agreement was reached. The parties signed a confidential settlement and general release. As part of the settlement, Mr. Henderson was awarded $11,000.00. The Respondent retained the entire $11,000 as his fee for his work in the Ashley Layne Designs case.

## CONCLUSIONS OF LAW REGARDING
## EMILY AND MICHAEL LEWIS

"With respect to Respondent's representation in the case of *Lewis, et al. V. Mihialovici, et al.*, Petitioner alleges that Respondent violated the Maryland Rules of Professional Conduct, including rules: 1.1, 1.3, 1.4, 3.2 and 8.4. This Court finds by clear and convincing evidence that the Respondent, Alan Edgar Harris, has violated the Maryland Rules of Professional Conduct, specifically:

1. Rule 1.1 by failing to competently represent the Lewis family.

2. Rule 1.3 by failing to serve all of the defendants, failing to appear for scheduled trial dates, and failing to cure self-imposed defects in the Lewis' case.

3. Rule 1.4(a) by failing to keep the Lewis family reasonably informed of the status of their case.

4. Rule 1.4(b) by failing to explain to Emily Lewis the effect that an order of dismissal based on a failure to appear would have on her case; by failing to explain the effect that an order of dismissal pursuant to Rule 3–507 would have on her case.

5. Rule 3.2 by failing to serve all of the defendants and by failing to serve the primary defendant until March of 1995.

6. Rule 8.4(a) by violating Rules 1.3 and 3.2.

### *Violation of Rule 1.1 [Competence]*

". . . Petitioner alleged that Respondent violated Rule 1.1 by failing to advise the Lewis family of trial date changes as well as failing to serve all of the defendants in *Lewis, et al. v. Mihialovici, et al.*

"In the following paragraphs, this Court finds that Respondent violated Rule 1.3 by failing to advise the Lewis family of trial date changes. We also find that Respondent violated Rule 3.2 by failing to serve all of the defendants in *Lewis, et. v. Mihialovici, et al.* With respect to Rule 1.1,

this Court finds that Respondent's violation of Rules 1.3 and 3.2 shows a significant lack of preparation and thoroughness. Therefore, we find by clear and convincing evidence that Respondent violated Rule 1.1.

### Violation of Rule 1.3 [Diligence]

"... Respondent argues that he was diligent in representing the Lewis[ ] [family] because he filed their case before the statutes of limitations expired, informed them of trial dates in advance, and attempted to effect service of process on the defendants. Respondent is correct in that he did file the case of *Lewis, et al. v. Mihialovici, et al.* before the expiration of the statute of limitations. It's also true that, in a letter from Respondent to Emily Lewis dated June 18, 1993, Respondent notified Mrs. Lewis that trial was scheduled for September 3, 1993 at 1:15 p.m. Respondent also explained in that letter that he had been unable to serve the defendant and if he could not perfect service by September 3, the trial would be rescheduled.

"No trial was held on September 3, 1993. The Lewis[ ] [family] appeared but Respondent did not. The case had been postponed but Respondent failed to inform the Lewis' of that fact before September 3. The trial was rescheduled for April 20, 1995. Again, Respondent did not appear. The trial was rescheduled again for July 13, 1995. Again, Respondent did not appear. The Lewis' did not appear either and the case was dismissed for that reason. On each of these occasions, the Respondent did not appear for scheduled trial dates. Also on these three occasions, the Respondent failed to notify the Lewis' that they did (or did not) have to appear.

"The Respondent filed the Lewis' case in February of 1992. Mr. Mihialovici, the driver of the cab that allegedly struck Michael Lewis was not served until March of 1995. The taxicab company, who employed the driver, was never served. At the hearing on this Disciplinary Petition, Respondent testified that he reissued service for the driver five or six times, always by private process server.

"He also testified that the taxicab company, as well as the driver, were 'ducking' service. From February 1992 to March 1995, a period of about three years, Respondent never attempted to serve the defendants by any other means than private process server.

"As a result of the dismissal of the Lewis' case in July of 1995, Respondent filed a Motion to Vacate the Order of dismissal on August 4, 1995. On August 15, 1995, this Motion was denied because Respondent failed to sign the Motion. The Respondent filed another Motion to Vacate the Order of Dismissal on September 25, 1995. On October 6, 1995, this Motion was also denied. On February 25, 1997, the Lewis' case against the taxicab company was dismissed pursuant to Maryland Rule 3–507.[8] Respondent was solely responsible for the dismissal of the Lewis'[ ] case in July 1995. The primary defendant had been served at least 3 months prior to the dismissal. The Lewis[ ] [family] appeared in court for the two previously scheduled trial dates, i.e. September 3, 1993 and April 20, 1995. Respondent did not appear on either of these two dates. Finally, on July 13, 1995, Respondent did not appear again, nor did he notify his clients, the Lewis', that they needed to appear. The Lewis' case was dismissed. Not through any fault of their own, but because of Respondent's inability to adequately communicate with them. Therefore, this court finds by clear and convincing evidence that the Respondent violated Rule 1.3.

*Violation of Rule 1.4(a) [Communication]*

". . . Petitioner alleges that Respondent failed to keep the Lewis[ ] [family] reasonably informed of the status of their case. Respondent argues that he notified the Lewis[ ] [family] of scheduled trial dates. He also argues that he took all calls from Ms. Lewis or Michael Lewis regarding their case and never failed to return a call that he missed.

---

8. Maryland Rule 3–507 is titled "Dismissal for lack of jurisdiction or prosecution." Lack of prosecution is evident in the case *sub judice.*

"As noted above, it is correct that Respondent sent Ms. Lewis a letter notifying her of the first scheduled trial date in the case. However, there were two other trial dates scheduled that Respondent failed to inform the Lewis[ ] [family] about. Respondent's failure to inform his clients about these other two dates resulted in the dismissal of their case. The reason for the dismissal was that the plaintiffs, i.e., the Lewis[ ] [family] and or their attorney, failed to appear. Respondent later filed two Motions to Vacate the dismissal, the first on August 4, 1995 and the second on September 9, 1995. Both motions were denied. Respondent never informed the Lewis[ ] [family] in writing that their case had been dismissed.

"After the second Motion to Vacate was denied, Respondent had no further correspondence with Ms. Lewis or Michael Lewis. At the hearing on this matter, Respondent testified that Michael Lewis called him sometime in September of 1995. During the conversation, Respondent testifies that Michael threatened to sue him. Respondent told Michael he could no longer represent him and he advised Michael to retain another attorney. Respondent also testified that he did not have a retainer agreement with Michael Lewis. Ms. Lewis, Michael's mother, signed a retainer agreement on September 12, 1989. Respondent testified that when Michael reached eighteen years of age in September of 1994, he should have had Michael sign a retainer agreement but he never did so.

"With respect to telephone contact with Ms. Lewis, Respondent testified that he never avoided her calls and never failed to return a message. He testified that Ms. Lewis did not have an answering machine and therefore when she was not available to speak to, he could not leave a message.

"Ms. Lewis acknowledged the fact that she did not have an answering machine. However, she testified that Respondent failed to return her calls on several occasions. Ms. Lewis testified that on one occasion she called Respondent at his home. Respondent's son took the call and informed

Ms. Lewis that he would be handling her case, not his father.

"Also at the hearing on this matter, Respondent testified that he told Michael Lewis that the case had been dismissed when Michael called him in September of 1995. It's clear from the retainer agreement, signed by Ms. Lewis in September of 1989, that she was in fact [ ] [respondent's] client. Although Michael Lewis was the actual victim, he was a minor at the time of the incident and therefore could not sign the retainer agreement. In order for Respondent to represent Michael Lewis, his mother, Ms. Lewis, had to sign the retainer agreement.

"In light of the facts stated above, this court finds by clear and convincing evidence, that the Petitioner violated Rule 1.4(a) by failing to keep Ms. Lewis, his client, reasonably informed of the status of her case.

*Violation of Rule 1.4(b) [Communication]*

". . . Petitioner alleges that Respondent violated Rule 1.4(b) by not explaining to Ms. Lewis what would happen to her case if he was unable to effect service of process on the defendants. Respondent counters that he did explain to Ms. Lewis what the consequences of failing to serve the defendants would be.

"In a letter from Respondent to Ms. Lewis, dated June 18, 1993, Respondent informed Ms. Lewis that a trial date had been scheduled for September 3, 1993 at 1:15 p.m. Also in this letter, Respondent explained that he would now attempt to effect service upon the defendants. Respondent concluded this letter by saying 'if this was accomplished in time, the trial would go on as scheduled, but if not then it would get another trial date.' [ ]

"Respondent did not inform Ms. Lewis or Michael Lewis that their case was dismissed on July 13, 1995. Respondent presented no evidence in support of his argument that he informed his clients that their case would be dismissed if no one appeared on their behalf.

"On August 20, 1996, the Honorable Gale R. Caplan entered an Order of Dismissal pursuant to Maryland Rule 3–507 for lack of prosecution. On February 25, 1997, Judge Caplan again entered an Order of Dismissal pursuant to Maryland Rule 3 507 for lack of prosecution. Respondent filed Motions to Vacate these orders on two separate occasions, i.e. August 4, 1995 and September 25, 1995. Both motions were later denied. At the hearing, Respondent presented no evidence that he informed Ms. Lewis of the two Orders of Dismissal.

"There was also no evidence presented by Respondent that he explained the effect of these orders on Ms. Lewis' case. This court finds, by clear and convincing evidence, that the Respondent's failure to explain to Ms. Lewis the effects of the Orders of Dismissal on her case constituted a violation of Rule 1.4(b).

*Violation of Rule 3.2 [Expediting Litigation]*

". . . Petitioner alleged that Respondent violated Rule 3.2 by failing to serve all of the defendants and by failing to serve the primary defendant, i.e. the taxi driver, until March of 1995. Respondent countered that he was unable to serve the taxicab company, and unable to serve the taxicab driver until March 1995, because they were evading service.

"The Respondent filed the Lewis' case in February of 1992. Mr. Mihialovici, the driver of the cab that allegedly struck Michael Lewis was not served until March of 1995. The taxicab company who employed the driver was never served. At the hearing on this Disciplinary Petition, Respondent testified that he reissued service for the driver five or six times, always by private process server.

"He also testified that the taxicab company and the driver were 'ducking' service. From February 1992 to March 1995, a period of about three years, Respondent never attempted to serve the defendants by other means available under the Rules, such as filing a Motion for Publication. Respondent allowed a period of approximately 3 years to elapse without attempting service of process by any other

means than private process server. This court finds, by clear and convincing evidence, that this constituted a violation of Rule 3.2.

### Violation of Rule 8.4(a) and 8.4(d) [Misconduct]

"... With regards to Ms. Lewis, this court finds that Respondent violated Rules 1.3, 1.4 and 3.2. As a result, this court also finds, by clear and convincing evidence, that the Respondent violated Rule 8.4(a).

"... Petitioner presented no evidence at the hearing that Respondent violated Rule 8.4(d) with regards to Ms. Lewis' case, and therefore this Court cannot by clear and convincing evidence find that Respondent violated Rule 8.4(d).

## CONCLUSIONS OF LAW REGARDING PRESTON HENDERSON

"With respect to Respondent's representation in the cases of *State Farm Mutual v. Preston Henderson* and *Henderson v. Ashley Lane Designs, Inc., et al.,* Petitioner alleges that respondent violated the Maryland Rules of Professional Conduct, including Rules: 1.5, 1.7, 1.8, 1.9 and 8.4. This Court finds by clear and convincing evidence that the Respondent, Alan Edgar Harris, has violated the Maryland Rules of Professional Conduct, specifically:

1. Rule 1.5 by charging his client, Mr. Henderson, an unreasonable fee.

2. Rule 1.7 by representing his client, Mr. Henderson, despite the existence of an impermissible conflict of interest.

3. Rule 1.8 by entering into an impermissible business, financial or property transaction with his client, Mr. Henderson.

4. Rule 1.9 by representing Mr. Henderson in the same or substantially related matter in which his interests were materially adverse to the interests of a former

client without consultation and consent of the former client.[9]

5.    Rule 8.4 by violating Rules 1.5, 1.7, and 1.9.

*Violation of Rule 1.5 [Fees]*

. . .

"Petitioner alleged that Respondent's fee for his work in the sexual harassment lawsuit i.e., *Henderson v. Ashley Layne Designs, Inc., et al.,* was unreasonable. Respondent countered that the attorney for Ashley Layne Designs, Inc. suggested that Respondent take the entire settlement as his fee.

"Sometime in 1997, while employed by Ashley Layne Designs, Inc. as a window treatment designer, Mr. Henderson sought Respondent's advice concerning sexual harassment at his place of employment. Mr. Henderson continued his employment with Ashley Layne Designs, Inc. until sometime in March of 1998. Mr. Henderson was discharged at that time and retained Respondent in connection with his claim for unemployment compensation. He also retained Respondent to represent him on his claims of sexual harassment and abusive discharge against his former employer.

"On January 20, 1999, Respondent filed suit against Ashley Layne Designs, Inc. for sexual harassment and for abusive discharge in the Circuit Court for Baltimore City, case number 24–C–99–000254. In April of 1999, after negotiation between the parties, an agreement was reached. The parties signed a confidential settlement and general release. As part of the settlement, Mr. Henderson was awarded $11,000.00.

"Respondent testified that as part of the party's negotiations, he had a 3–way conversation that included the attorney for Ashley Lane Designs (hereinafter, 'Mr. Eidelman'), Mr. Henderson, and himself. Respondent alleged that dur-

---

**9.**    *See supra* footnote 6.

ing this conversation, Mr. Eidelman proposed the $11,000 figure as a settlement award.

"In a later conversation between Respondent and Mr. Henderson, Respondent explained to Mr. Henderson that he would have to pay taxes on the $11,000. Mr. Henderson indicated that he did not have the money to pay taxes on the settlement award. The conversation ended at this point.

"Respondent then testified that he had another conversation with Mr. Eidelman. This time Mr. Eidelman initiated the conversation. During this conversation, Mr. Eidelman suggested that Respondent take the entire $11,000 as his fee. He also suggested that this would allow Mr. Henderson to avoid paying taxes on the settlement award. Respondent agreed to this and the conversation ended.

"Respondent later testified that when the settlement check arrived from Ashley Lane Designs, Inc. he gave Mr. Henderson $3,000 as a gift. Later that same day, respondent gave Mr. Henderson $1,200 as payment for draperies that he made for Respondent's son. Respondent testified that Mr. Henderson agreed to this arrangement and made no objections until he received a letter from Respondent's wife that he would be evicted from the property located at 2440 Keyworth Avenue.

"Respondent testified that he explained to Mr. Henderson in a letter that Ashley Lane Designs was responsible for paying his fee in this case. However, respondent did not produce this letter or any other evidence to support his testimony. Respondent also testified that he did not tell Mr. Henderson what he could expect to recover until Ashley Lane Designs made the $11,000 offer.

"Mr. Henderson testified that Respondent told him he could expect to receive from $85,000 to $1.5 million from Ashley Lane Designs. He had no discussion about a potential settlement with Respondent prior to Respondent informing him of Ashley Lane Design's offer of $11,000. Mr. Henderson also testified that Respondent never told him that Ashley Lane Designs was responsible for his fee.

"Mr. Henderson acknowledged that Respondent did discuss the tax consequences of the $11,000 with him but not until Respondent delivered the check to him at his home. He confirmed that he told Respondent that he could not afford to pay taxes on the $11,000. Mr. Henderson then testified that Respondent stated that he would pay the taxes on the $11,000 and put the entire $11,000 towards the repurchase of the house located at 2440 Keyworth Avenue.

"Mr. Henderson's account of how he received the $3,000 was quite different than that of the Respondent. Mr. Henderson stated that he did make draperies for Respondent's son-in-law. He told Respondent's son-in-law that the cost would be between $1,100 and $1,200. After he finished the job, Respondent provided Mr. Henderson with a ride home. During this ride, Respondent gave Mr. Henderson $3,000 cash. Mr. Henderson testified that he did not know why Respondent gave him the $3,000. He did not ask any questions even though this was more than the cost of the draperies.

"Later in his testimony, Mr. Henderson acknowledged that he signed the settlement agreement and release prepared by Mr. Eidelman. He stated that he complained to the Respondent that $11,000 was much less than what Respondent told him he could expect. Mr. Henderson indicated that he signed the settlement agreement and the release despite his complaint because he trusted Respondent's judgment as a lawyer.

"Mr. Henderson testified that he did not discuss whether or not he had to pay taxes on the $11,000 with anyone other than Respondent. He stated that he didn't know or wasn't told that Respondent was retaining the entire $11,000 as his fee. Mr. Henderson also testified that no one else was present when Respondent told him he could expect to recover from $85,000 to $1.5 million.

"The accounts of Respondent and Mr. Henderson differ substantially. That aside, the uncontroverted fact is that Respondent accepted the entire $11,000 settlement award as

his fee.   Rule 1.5 lists 8 factors that are to be considered in determining the reasonableness of a fee.

Factor (1): 'the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.'   Respondent testified that he filed the complaint in the Ashley Lane Designs case with the court.   He also filed the settlement agreement, although he did not draft it himself.   Mr. Eidelman drafted the settlement agreement and release. Respondent also testified that he took this case on a contingency basis.   He did not keep time records of his work in this case because attorneys are not required to keep time records in contingency cases.

Factor (2): 'the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.'   There was no testimony or evidence presented at the hearing on this matter that Respondent was precluded from taking other cases because he accepted Mr. Henderson's case.

Factor (3): 'the fee customarily charged in the locality for similar legal services.'   Respondent testified that his hourly rate in 1998 was $250 per hour.   Apparently this was his general fee.   Respondent did not testify specifically as to the amount of his fee in sexual harassment cases.

Factor (4): 'the amount involved and the results obtained.'   There was conflicting testimony with respect to this factor.   Mr. Henderson testified that Respondent told him he could expect to recover from $85,000 to $1.5 million from Ashley Lane Designs.   Respondent testified that he did not tell Mr. Henderson this.   He did not tell Mr. Henderson what he could expect to recover until Mr. Eidelman proposed the $11,000 figure.   The amount of the settlement award that Mr. Henderson accepted was $11,000.00.   This was also the amount that Respondent retained as his fee.

Factor (5): 'the time limitations imposed by the client or the circumstances.'   There was no testimony with respect

to this factor. However, the docket entries from the case reflect that a complaint was filed on January 20, 1999 and a Stipulation of Dismissal was filed on March 22, 1999. Factor (6): 'the nature and length of the professional relationship with the client.' Respondent testified that he had represented Mr. Henderson and members of his family, on various matters, for over thirty years. He also testified that he considered Mr. Henderson a friend of the family.

Factor (7): 'the experience, reputation, and ability of the lawyer or lawyers performing the services.' Respondent is an attorney licensed to practice law in the State of Maryland since 1960. He has represented between fifteen and twenty thousand clients in automobile negligence cases. No testimony was presented indicating how many sexual harassment claims Respondent has handled.

Factor (8): 'whether the fee is fixed or contingent.' Respondent testified that he agreed to represent Mr. Henderson on his sexual harassment claim on a contingency basis. He did not negotiate his fee with Mr. Henderson and did not discuss what his fee would be until Mr. Eidelman proposed the $11,000 as a settlement of Mr. Henderson's claim.

"Respondent drafted the complaint in this case. He negotiated with the attorney for Ashley Lane Designs, Inc. to reach a settlement of Mr. Henderson's claim. Respondent did not draft the settlement agreement and release. He did not indicate to Mr. Henderson that representing him on this matter would preclude him from representing other clients. Respondent's fee in 1998 was $250 per hour. It's unclear how much Mr. Henderson's claim was potentially worth. The settlement award he received was $11,000. Respondent retained the entire $11,000 as his fee. Respondent did not keep time records of his work in this matter but the docket entries in this case reflect a three-month span between the filing of the complaint and the filing of the Stipulation of Dismissal. Mr. Henderson was not a new client. Respondent represented Mr. Henderson and mem-

bers of his family for over thirty years and considered them friends of his family. Respondent has practiced law for over forty years. The majority of those cases were taken on a contingency basis.

"In light of these facts, this court finds by clear and convincing evidence, that Respondent's fee in the case of *Preston L. Henderson v. Ashley Lane Designs, Inc. et al* was unreasonable. The work Respondent performed in that matter was significantly out of proportion to the amount of his fee. If Respondent kept time records for his work in that case, perhaps an argument to the contrary could be made, but he did not. That aside, a fee that is 100 percent of the client's monetary recovery in a case, clearly crosses the line.

*Violation of Rule 1.7 [Conflicts of Interest Generally]*

"Petitioner alleges that Respondent's representation of Mr. Henderson in the *State Farm Mutual* case and the *Ashley Lane Designs* case was materially limited by Respondent's interest as Mr. Henderson's landlord. Respondent countered that his representation of Mr. Henderson in these cases was not materially limited by the fact that he was also Mr. Henderson's landlord.

"In or about August 1996, Mr. Henderson lived at 2440 Keyworth Avenue in Baltimore City and while he resided there, that property was subject to foreclosure. Respondent purchased the property at a foreclosure sale for $17,000. He told Mr. Henderson that he would allow him to continue residing in the house until he could repurchase it from the Respondent.

"There was no written agreement between Mr. Henderson and Respondent regarding Mr. Henderson's repurchase of the property. There was also no written agreement as to Mr. Henderson's obligations with respect to rent, taxes or other expenses related to the property.

"In 1996, Mr. Henderson was involved in an automobile accident and was sued for damages. The Respondent represented Mr. Henderson in that case, i.e. *State Farm Mutual v. Preston Henderson.* Mr. Henderson was still a tenant of Respondent living at the 2440 Keyworth Avenue property. A judgment in the approximate amount of $11,935 was entered on or about September 3, 1997 in favor of State Farm Mutual.

"On September 4, 1997, Respondent filed suit against Mr. Henderson in the District Court of Maryland for Baltimore City seeking back rent. On September 11, 1997, a default judgment was entered against Mr. Henderson. Respondent was awarded a judgment in the amount of $7,200.00. On or about September 15, 1997, Respondent filed a Writ of Garnishment of Wages and Mr. Henderson's wages were later garnished.

"Mr. Henderson testified that the purpose of the suit for back rent filed by Respondent against him in the District Court was to avoid paying the State Farm Mutual Judgment. He alleged that Respondent explained to him that if he was awarded a judgment for back rent he could garnish Mr. Henderson's wages ahead of State Farm Mutual. Mr. Henderson testified that he agreed to this arrangement because he preferred that the Respondent receive the money as opposed to State Farm Mutual.

"Respondent's representation of Mr. Henderson in the State Farm Mutual case was materially limited by Respondent's own interest. Respondent clearly has an interest in the property located at 2440 Keyworth Avenue. He was the owner of this property after he purchased it at the foreclosure sale. Respondent testified that he was paying the mortgage, taxes, and utilities on the property because Mr. Henderson refused to pay him anything.

"The Judgment in the State Farm Mutual case against Mr. Henderson was entered the day before Respondent filed suit for back rent in the District Court. There was no evidence presented at the hearing to indicate that Respondent ceased his representation of Mr. Henderson at this time.

"Respondent did not believe that his representation of Mr. Henderson in the State Farm Mutual case would be adversely affected. Mr. Henderson was the uninsured defendant. There was no testimony produced to suggest that Respondent did not competently represent Mr. Henderson in that case.

"Respondent also did not believe that his representation of Mr. Henderson in the Ashley Lane Designs case would be adversely affected. Mr. Henderson was awarded $11,000 by Ashley Lane Designs, Inc. as a settlement of his claim. Respondent negotiated with opposing counsel to arrive at this amount. Respondent retained the entire $11,000 as his fee.

"Mr. Henderson testified that Respondent did not explain to him the potential negative effect that serving as his attorney and landlord simultaneously could have. The potential for the representation to be adversely affected was greater under the circumstances because Respondent was landlord to a tenant who refused to pay rent or other expenses related to the house. Clearly, any landlord under these circumstances would want the money that was owed to them. Respondent was in a unique position in that he would have access to any settlement or award as Mr. Henderson's landlord and attorney.

"Because Respondent did not explain the potential conflict of interest to Mr. Henderson, he could not obtain Mr. Henderson's consent to that conflict. Respondent testified that he advised Mr. Henderson that he could seek independent counsel, but not that he should seek independent counsel. Respondent did not put this advice in writing.

"This court finds by clear and convincing evidence that Respondent violated Rule 1.7.

*Violation of Rule 1.8 [Conflicts of Interest–*
*Prohibited Transactions]*

. . .

"The purchase of a house is clearly a property transaction. As noted above, Respondent purchased Mr.

Henderson's house at a foreclosure sale. Mr. Henderson testified that the State Farm Mutual case was pending during the foreclosure sale of his house. That means that Respondent was representing Mr. Henderson in an automobile negligence case during the same time that he purchased Mr. Henderson's house.

"Respondent did not purchase the house from Mr. Henderson, but at the foreclosure sale. That fact tends to indicate that subsection (1) of Rule 1.8(a) is inapplicable because Mr. Henderson was not a party to the transaction, i.e. the purchase of the house at the foreclosure sale.

"Respondent testified that he paid $17,000 for Mr. Henderson's house at the foreclosure sale. He later had the property assessed and indicated that it was valued at $60,000. Respondent then testified that two or three years after June of 1997, he offered to allow Mr. Henderson to repurchase the house for $30,000. There was never a written agreement with respect to rent or other expenses related to the house, but Respondent produced several letters during the hearing that requested that [ ] [Mr. Henderson] pay $600 per month for rent. These letters also indicated that Respondent was paying the property taxes and utility bills. These facts tend to support Respondent's claim that the transaction was fair and equitable.

"Respondent was also representing Mr. Henderson in the State Farm Mutual case the day before he filed a suit for back rent against Mr. Henderson in the District Court for Baltimore City. Respondent presented no evidence at the hearing to show that he ceased his representation of Mr. Henderson in the State Farm Mutual case before filing the suit for back rent. That suit resulted in a judgment in favor of Respondent. To collect on that judgment, Respondent garnished Mr. Henderson's wages.

"The Petitioner, as well as Mr. Henderson, alleged that the District Court suit might not have been for the sole purpose of collecting back rent. Mr. Henderson testified that the purpose of the suit for back rent filed against him by Respondent in the District Court was to avoid paying the

State Farm Mutual Judgment. He alleged that Respondent explained to him that if he (Respondent) was awarded a judgment for back rent he could garnish Mr. Henderson's wages ahead of State Farm Mutual. Mr. Henderson testified that he agreed to this arrangement because he preferred that the Respondent receive the money as opposed to State Farm Mutual.

"With regards to subsection (2) of Rule 1.8(a), Respondent presented no written evidence that he ever advised Mr. Henderson to seek independent counsel. Respondent testified that he advised Mr. Henderson that he could seek independent counsel, but not that he should do so. Mr. Henderson denied that Respondent ever suggested that he seek the advice of independent counsel.

"This court finds, by clear and convincing evidence, that Respondent violated Rule 1.8(a).

". . . Petitioner alleged that Respondent violated this rule [Rule 1.8(j) ] when he purchased Mr. Henderson's house at the foreclosure sale while also representing him in a bankruptcy case.

"Respondent testified that the purpose of the bankruptcy action was to forestall the foreclosure of Mr. Henderson's house. That testimony, coupled with the foreclosure sale itself, indicates that Mr. Henderson's house was connected with the bankruptcy proceedings.

"This court finds, by clear and convincing evidence, that Respondent violated Rule 1.8(j).

. . .

*Violation of Rules 8.4(a), 8.4(c) and 8.4(d) [Misconduct]*

". . . With regards to Preston Henderson, this court finds that Respondent violated Rules 1.5, 1.7 and 1.8. As a result, this court also finds that the Respondent violated Rule 8.4(a).

". . . Although Petitioner presented evidence that Respondent may have filed suit for back rent for the sole purpose of garnishing Mr. Henderson's wages ahead of State Farm

Mutual, that allegation could not be sustained. As a result, this court finds no violation of Rule 8.4(c).

". . . [Respondent] sent a letter requesting $600 per month in rent three months before he filed the suit. Mr. Henderson did not pay any rent to Respondent during those three months. Respondent therefore has a legitimate reason for filing the suit for back rent. This court finds no violation of Rule 8.4(d)." [Alterations added.]

## II. Standard of Review

It is well established that "[t]his Court has original jurisdiction over attorney disciplinary proceedings." *Attorney Grievance Comm'n v. Dunietz,* 368 Md. 419, 427, 795 A.2d 706, 710–711 (2002) (citing *Attorney Grievance Comm'n v. Snyder,* 368 Md. 242, 253, 793 A.2d 515, 521 (2002)); *Attorney Grievance Comm'n v. Harris,* 366 Md. 376, 388, 784 A.2d 516, 523 (2001); *Attorney Grievance Comm'n v. Gavin,* 350 Md. 176, 189, 711 A.2d 193, 200 (1998); *Attorney Grievance Comm'n v. Adams,* 349 Md. 86, 93, 706 A.2d 1080, 1083 (1998); *Attorney Grievance Comm'n v. Glenn,* 341 Md. 448, 470, 671 A.2d 463, 473 (1996); *Attorney Grievance Comm'n v. Kent,* 337 Md. 361, 371, 653 A.2d 909, 914 (1995); *Attorney Grievance Comm'n v. Powell,* 328 Md. 276, 287, 614 A.2d 102, 108 (1992). *See also* Md. Rule 16–709(b) (stating that "[c]harges against an attorney shall be filed on behalf of the [Attorney Grievance] Commission in the Court of Appeals"). Furthermore, "[a]s the Court of original and complete jurisdiction for attorney disciplinary proceedings in Maryland, we conduct an independent review of the record." *Attorney Grievance Comm'n v. Garfield,* 369 Md. 85, 97, 797 A.2d 757, 763 (2002) (quoting *Snyder,* 368 Md. at 253, 793 A.2d at 521 (citing *Attorney Grievance Comm'n v. Garland,* 345 Md. 383, 392, 692 A.2d 465, 469 (1997))).

In our review of the record, "[t]he hearing judge's findings of fact will be accepted unless we determine that they are clearly erroneous." *Garfield,* 369 Md. at 97, 797 A.2d at 763 (quoting *Snyder,* 368 Md. at 253, 793 A.2d at 521 (citations

omitted)). *See also Dunietz,* 368 Md. at 427–28, 795 A.2d at 711 ("The hearing judge's findings of fact 'are *prima faci[e]* correct and will not be disturbed unless clearly erroneous.' ") (quoting *Attorney Grievance Comm'n v. Zdravkovich,* 362 Md. 1, 21, 762 A.2d 950, 960–61 (2000)); *Attorney Grievance Comm'n v. Monfried,* 368 Md. 373, 388, 794 A.2d 92, 100 (2002) ("Factual findings of the hearing judge will not be disturbed if they are based on clear and convincing evidence."). We recently reiterated the definition of clear and convincing evidence in *Harris,* 366 Md. at 389, 784 A.2d at 523 (quoting *Attorney Grievance Comm'n v. Mooney,* 359 Md. 56, 79, 753 A.2d 17, 29 (2000)), when we said:

> " 'The requirement of "clear and convincing" or "satisfactory" evidence does not call for "unanswerable" or "conclusive" evidence. The quality of proof, to be clear and convincing, has also been said to be somewhere between the rule in ordinary civil cases and the requirement of criminal procedure—that is, it *must be more than a mere preponderance but not beyond a reasonable doubt.* It has also been said that the term "clear and convincing" evidence means that the witnesses to a fact must be found to be credible, and that the facts to which they have testified are distinctly remembered and the details hereof narrated exactly and in due order, so as to enable the trier of the facts to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue. Whether evidence is clear and convincing requires weighing, comparing, testing, and judging its worth when considered in connection with all the facts and circumstances in evidence.' [Emphasis added.]

359 Md. at 79, 753 A.2d at 29 (quoting *Berkey v. Delia,* 287 Md. 302, 320, 413 A.2d 170, 178 (1980) (citing *Whittington v. State,* 8 Md.App. 676, 679 n. 3, 262 A.2d 75, 77 n. 3 (1970)))."

We recently explained in *Dunietz* that "[a]s to the hearing judge's conclusions of law, 'our consideration is essentially *de novo.*' " *Dunietz,* 368 Md. at 428, 795 A.2d at 711 (quoting *Attorney Grievance Comm'n v. Thompson,* 367 Md. 315, 322, 786 A.2d 763, 768 (2001) (quoting *Attorney Grievance Comm'n v. Briscoe,* 357 Md. 554, 562, 745 A.2d 1037, 1041 (2000))).

As indicated *supra,* both respondent and petitioner have filed exceptions to the hearing judge's findings of fact and conclusions of law. After a review of the record, we affirm the hearing judge's findings of fact and hold that they are not clearly erroneous and are based on clear and convincing evidence. *See Garfield,* 369 Md. at 97, 797 A.2d at 763–64; *Dunietz,* 368 Md. at 427–28, 795 A.2d at 711; *Monfried,* 368 Md. at 388, 794 A.2d at 100. We shall, however, uphold petitioner's exceptions as to her conclusions. As to respondent's exceptions, the hearing judge's conclusions are supported by the facts of the case. Accordingly, we shall overrule respondent's exceptions.

### III. Discussion

Respondent filed four exceptions to Judge Holland's Findings of Fact and Conclusions of Law. Respondent's first three evidentiary exceptions relate to Judge Holland's allegedly improper findings regarding her background findings and the allegedly incomplete findings she made in respect to certain facts regarding both the Lewis and Henderson matters. In respondent's fourth exception, he excepts to Judge Holland's conclusions that he violated MRPC 1.1, 1.3, 1.4, 3.2 and 8.4 with respect to the Lewis matter and MRPC 1.5, 1.7, 1.8, 1.9 [10] and 8.4 with respect to the Henderson matter, claiming that the hearing judge's conclusions were not based on clear and convincing evidence. We find these exceptions to be without merit and overrule them. On the other hand, petitioner excepts to Judge Holland's conclusion that respondent did not violate MRPC 8.4(d) in both the Lewis and Henderson matters. We sustain petitioner's exceptions. We address the exceptions below.

### A. Respondent's Exceptions to Findings of Fact and Conclusions of Law Respondent's Exception 1

Respondent asserts that Judge Holland erred in finding, as part of her recitation of "Background Facts," that

---

**10.** *See supra* footnote 6.

respondent was sanctioned for violation of various MRPC provisions in his most recent disciplinary hearing before that court where she has presided as the hearing judge. Respondent alleges that that finding is not properly part of the hearing judge's function and may have biased her fact finding and conclusions of law.

Respondent was not prejudiced by Judge Holland noting his disciplinary past when she considered the MRPC violations alleged in this case *sub judice,* particularly by her noting his past discipline in the beginning paragraphs of her findings and conclusions. Judge Holland issued very complete and in-depth findings and, for the most part, fully supported conclusions, which we have reiterated extensively in this opinion. For sanctioning purposes, this Court has "made clear that the attorney's prior grievance history, including whether there were prior disciplinary proceedings, the nature of the misconduct involved and the sanction imposed, as well as facts in mitigation, are to be taken into account." *Attorney Grievance Comm'n v. Jeter,* 365 Md. 279, 290, 778 A.2d 390, 396 (2001). *See Attorney Grievance Comm'n v. Franz,* 355 Md. 752, 736 A.2d 339 (1999); *Maryland State Bar Ass'n v. Phoebus,* 276 Md. 353, 347 A.2d 556 (1975). We are not aware of, nor has respondent brought to our attention, any case law prohibiting the hearing judge from noting an attorney's past disciplinary history. It is likely that such information would be made known to the hearing judge by Bar Counsel regarding. an attorney who has been repeatedly disciplined, such as respondent here. We overrule this exception.

### Respondent's Exception 2

Respondent excepts to Judge Holland's finding that he did not "communicate to the Lewis[ ] [family] that he was no longer willing to represent them" because there was not clear and convincing evidence to support this fact. Judge Holland found that "[r]espondent alleged that [during a telephone conversation where Michael Lewis told respondent he was unhappy with the way his case was being conducted] Michael Lewis discharged him in September of 1995 ... [and] that

Michael Lewis threatened to sue him." Respondent alleged that at that time he suggested that Michael hire another attorney. Nonetheless, "[r]espondent never withdrew his appearance nor did he *communicate to the Lewis* [ ] [family] *that he was no longer willing to represent them.*" (alterations and emphasis added). Respondent notes, and the record reveals, that Ms. Lewis testified that Michael Lewis told her in 1995 that respondent had told him that he would no longer be his lawyer, arguably corroborating respondent's testimony and supporting this exception.

Nevertheless, this evidentiary conflict insofar as the hearing stage is concerned was for Judge Holland to resolve in order for her to render findings and conclusions in the first instance. It is well settled that a hearing judge " 'may elect to pick and choose which evidence . . . to rely upon' . . . assess the credibility of the witnesses . . . [and that his finding in that regard are entitled to] appropriate deference." *Attorney Grievance Comm'n v. Goldsborough,* 330 Md. 342, 356, 624 A.2d 503, 509 (1993) (citations omitted) (alteration added). While respondent claims that he did communicate to the Lewises that he was no longer willing to represent them, we hold that there was clear and convincing evidence to support Judge Holland's findings and conclusions. Regarding the Lewis matter, Judge Holland stated that "[r]espondent never withdrew his appearance" of the Lewises and the record reveals that Ms. Lewis signed the retainer agreement, which also made Ms. Lewis his client. The hearing judge impliedly found respondent not to be credible on this matter. She found and concluded that even though respondent may have told Michael Lewis that he could no longer represent him and advised him to retain another attorney, his attempt to sever his representation of the Lewises was undermined by the fact that respondent had no retainer agreement with Michael Lewis and by his failure to withdraw or attempt to withdraw his appearance in respect to Ms. Lewis, who was a party to the retainer agreement. We note that respondent took no affirmative steps, other than this alleged phone conversation with Michael Lewis, to terminate his representation and it was

proper for Judge Holland to find that he failed to sufficiently communicate to the Lewises that he was no longer willing to represent them. We overrule this exception.

### Respondent's Exception 3

Respondent excepts generally to the findings stated by the hearing judge regarding his client, Mr. Henderson, in both the State Farm Mutual and Ashley Layne Designs, Inc. matters. Essentially, respondent submits in this exception that the hearing judge's findings are 'significantly incomplete because they omit findings as to matters of record herein which are necessary to fairly state the facts relevant to the activities identified in that heading [regarding Mr. Henderson]." Respondent claims, as he did in his previous exception, that there was conflicting testimony before the hearing judge on the facts associated with his involvement with Mr. Henderson, which "render[s] those findings unusable as clear and convincing evidence and hence as bases for disciplinary action against respondent ... [and that they] should not be accepted by this Court absent all other findings essential to their completion."

As we explained *supra* in discussing our standard of review, this Court reviews the factual findings of a hearing judge under a clearly erroneous standard. In determining whether the findings here meet that standard, we reiterate the concept that "the judge 'may elect to pick and choose which evidence to rely upon.' " *Garfield,* 369 Md. at 99, 797 A.2d at 765 (citing *Attorney Grievance Comm'n v. Hines,* 366 Md. 277, 291, 783 A.2d 656, 664 (2001)) (quoting *Attorney Grievance Comm'n v. Sheridan,* 357 Md. 1, 17, 741 A.2d 1143, 1152 (1999)). We have reviewed the record and hold that there was clear and convincing evidence supporting her findings of fact. We overrule this exception.

### Respondent's Exception 4

We now turn to respondent's fourth exception relating to Judge Holland's conclusions of law that he violated MRPC 1.1, 1.3, 1.4, 3.2 and 8.4 with respect to the Lewis matter and MRPC 1.5, 1.7, 1.8 and 8.4 with respect to the Henderson

matter. Respondent argues these findings and conclusions are not supported by clear and convincing evidence. Once more, based upon our review of the record, we hold that Judge Holland's findings of fact and conclusions of law, as they relate to those violations, are supported by clear and convincing evidence.

### i. The Lewis Matter

■ Judge Holland's conclusions with respect to MRPC 1.1, 1.3, 1.4(a) and (b), 3.2 and 8.4(a) are, as respondent notes in his exceptions, based upon the same professional misconduct on the part of respondent. We shall address respondent's exceptions to each of these rule violations and refer generally to respondent's actions which, along with evidence presented by Bar Counsel, provided clear and convincing evidence for Judge Holland to conclude as she did.

Rule 1.1 requires "the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." Judge Holland concluded that respondent failed to competently represent the Lewis family. Respondent excepts to the fact that Judge Holland concluded that this rule was violated because she found that respondent also violated Rules 1.3 and 3.2, which pertain to diligence and expedition of litigation. Respondent asserts that Rule 1.1 is not a "catch-all" rule and mere violations of other MRPC do not implicate a violation of Rule 1.1. We disagree. Judge Holland emphasized in her conclusions that "[r]espondent violated Rule 1.3 by failing to advise the Lewis family of trial date changes ... [and] Rule 3.2 by failing to serve all of the defendants in the [Lewis matter] ... show[ ][ing] a significant lack of preparation and thoroughness. Therefore, we find by clear and convincing evidence that Respondent violated Rule 1.1." There is no dispute that respondent possesses the legal knowledge and skill to provide competent representation under Rule 1.1, as evidenced by his long practice history involving thousands of cases; he, nonetheless, can still be held to violate Rule 1.1 due to, as Judge Holland emphasized, lack of thoroughness and preparation in respect to a particular case, in this instance the

Lewis matter. Clearly, other MRPC violations can evidence this failure. Competence as an attorney certainly entails competence in preparation and thoroughness of handling a client's case. Respondent claims that "[t]he hearing judge attempts to treat Rule 1.1 as a 'catch all' rule.... Nothing in the text of Rule 1.1 or any construction or interpretation of the rule that has come to respondent's attention indicates any intention that it be used in that manner."

The comment of Rule 1.1 provides that "competent handling of a particular matter ... also includes adequate preparation. The required attention and preparation are determined in part by what is at stake." In this case the record reflects that respondent not only missed scheduled trial dates, but he did not inform the Lewises when they did or did not have to appear in court and also failed to serve all the defendants whom respondent admitted were "ducking service." Michael Lewis' automobile negligence case was at stake and there is no question that respondent should have better informed his clients of the court appearances. Serving both the taxicab driver and cab company owners was a fundamental step to getting the proper parties involved to potentially recover damages for Michael Lewis' claim. Respondent should have made better efforts to serve them. In this case respondent did not perform competently; he was not duly prepared or thorough. Further, case law supports a Rule 1.1 violation of incompetence for general ill-preparedness and lack of thoroughness. *See generally Mooney,* 359 Md. 56, 753 A.2d 17 (Rule 1.1 as violated where an attorney, among other things, failed to provide the client with correct information that the client did not have to appear for a scheduled trial date and failing to appear on behalf of the client); *Attorney Grievance Comm'n v. Ficker,* 319 Md. 305, 572 A.2d 501 (1990) (finding a Rule 1.1 violation where the attorney went into to court unprepared or missed scheduled trial dates completely); *Attorney Grievance Comm'n v. Brown,* 308 Md. 219, 517 A.2d 1111(1986) (holding that seven errors, each separate and inconsequential, taken together amounted to collective incompetence). Accordingly, we also overrule this exception.

■ Rule 1.3 pertaining to diligence states that a "lawyer shall act with reasonable diligence and promptness in representing a client." In her conclusions of law, Judge Holland notes some instances that show respondent's diligence and agrees with respondent that he acted diligently in those ways, *i.e.,* respondent's notification to Ms. Lewis regarding when the trial was originally scheduled and how he once explained in a letter that the trial could potentially be rescheduled. In his exceptions, respondent supports his diligence by highlighting the type of evidence before the hearing judge indicative of diligence, *i.e.,* the docket entries showing several rescheduling changes, his two motions to vacate the judgment after the case was dismissed and how the transcript reflects that the hearing judge knew he had severe familial and personal problems that may have contributed to his non-appearances in the Lewis matter. However, the issue of whether a respondent is prompt and diligent focuses more intensely on the alleged factors or instances when he or she was not prompt and diligent. Respondent seems to ignore the following paragraphs of Judge Holland's conclusions, where she went on to detail the many instances that did display respondent's lack of diligence and led to her conclusion that he violated Rule 1.3. The instances where respondent was diligent, if any, do not excuse his three non-appearances for scheduled trial dates and his failure to notify the Lewises about these dates and if they were or were not to appear in court on those dates. Even though respondent had attempted to serve the cab driver and the cab company owner who were "ducking service," there was an issue regarding his attempts at service of process. Respondent filed the Lewises' case in 1992 and succeeded in serving the cab driver only as of 1995. There was, therefore, a period of three years where respondent never attempted to serve the defendants by means other than by a private process server. Ultimately, the Lewises' case was dismissed directly because of respondent's lack of action, which resulted in the failure to prosecute the case. In fact, when there was a chance to cure the dismissal via a Motion to Vacate the Order of Dismissal,

the Motion was denied because respondent failed to sign the Motion.

Respondent's meager actions in the Lewis matter achieved nothing. Judge Holland's conclusion that respondent violated Rule 1.3 was not clearly erroneous. *See Attorney Grievance Comm'n v. Fezell,* 361 Md. 234, 760 A.2d 1108 (2000) (repeated failure to serve defendant demonstrated a lack of diligence); *Ficker,* 319 Md. 305, 572 A.2d 501 (being altogether absent from a scheduled trial date showed a lack of diligence). We overrule this exception.

■ Respondent's violations of Rule 1.4(a) and (b) which cover attorney diligence, pertain to his failure to keep Ms. Lewis reasonably informed of the status of her case, *i.e.,* his failure, on two occasions, to inform Ms. Lewis of a rescheduled trial date, as well as his failure to explain the matter and the effects of the orders of dismissal to the extent reasonably necessary for her to make informed decisions regarding his representation. As to Rule 1.4(a), respondent states in his exceptions that Judge Holland refers, at some length, to the factual conflicts regarding the communication that actually took place between respondent and Ms. Lewis. We accept Judge Holland's findings as to this evidence and her conclusions that there was clear and convincing evidence to find a violation of Rule 1.4(a), despite the extent to which respondent alleged he communicated with Ms. Lewis regarding her case. We overrule this exception.

Respondent excepts to the hearing judge's finding that he violated Rule 1.4(b). He offers no valid support for this exception except for stating that he answered Ms. Lewis' calls and inquires and told her the case was closed. As Judge Holland noted, respondent did initially inform Ms. Lewis what the consequences would be if he could not serve the defendants, but respondent gave little more explanation regarding the case to the Lewises. The record is clear. Respondent did not inform them that their case was dismissed directly because of his lack of prosecution, nor did he tell them of the two Motions to Vacate or that they were denied, in one instance

because he simply failed to sign the Motion. Ultimately, there was no evidence presented by respondent that he explained the effects of these orders on the Lewises' case. We overrule this exception.

Respondent excepts to Judge Holland's finding that, by virtue of violating the rules just discussed and basing her conclusion on the very same misconduct of respondent, he, by necessity, violated Rule 8.4(a). The plain language of Rule 8.4(a) provides that it is professional misconduct to violate a provision of the MRPC. Therefore, the same professional misconduct can overlap to implicate violation of various provisions of the MRPC. In fact, a cursory glance at the many attorney grievance opinions clearly shows that where an attorney has violated one rule of the MRPC, that attorney has often violated many, based on the combined whole of the attorney's misconduct. Having already sustained Judge Holland's conclusions that respondent violated MRPC 1.1, 1.3, 1.4(a) and (b), and 3.2, we conclude that Judge Holland was presented with clear and convincing evidence from which to determine that respondent violated Rule 8.4(a). *See Attorney Grievance Comm'n v. Johnson,* 363 Md. 598, 631, 770 A.2d 130, 150 (2001).

### ii. The Henderson Matters

Rule 1.5, in pertinent part, states that a "lawyer's fee shall be reasonable" and lists eight factors to be considered in determining the reasonableness of a fee. Judge Holland discussed each of the eight factors and the relevant facts and concluded that respondent violated this rule. The settlement agreement effectuated by respondent in this matter clearly states that Ashley Layne Designs, Inc. shall pay $11,000.00 to "Henderson and his attorney ... as payment for attorneys' fees incurred in this matter." Judge Holland ultimately concluded that despite the varying testimony regarding the fee, its amount and why and how respondent ended up with the amount he did minus any "gift" amount to Mr. Henderson, respondent, nevertheless, accepted the entire $11,000 settle-

ment award as his "attorney fee." For the same reasons listed, *supra*, after each of the eight factors to be considered regarding the reasonableness of a fee, *i.e.*, the factors reflecting the nature of the fee in respect to the work done, respondent's experience, reputation, relationship with the client and the like, we affirm Judge Holland's conclusion that respondent violated this rule. An amount of $11,000 for the amount of work done by respondent in the Ashley Layne Designs' case was as the hearing judge concluded "significantly out of proportion to the amount of his fee .... a fee that is 100 percent of a client's monetary recovery in a case, clearly crosses the line."

The hearing judge concluded that respondent violated Rule 1.7, pertaining to general conflicts of interest, and Rule 1.8, pertaining to conflicts of interest regarding prohibited transactions, in his representation of Mr. Henderson in his bankruptcy proceedings, the State Farm Mutual matter and the Ashley Layne Designs' matter. Judge Holland had clear and convincing evidence to find that respondent violated these two rules and we overrule respondent's exception to her conclusions. Respondent was in the unique position of being Mr. Henderson's attorney and landlord, thereby creating a potential conflict when he represented Mr. Henderson in his sexual harassment claim. As Judge Holland inferred, any landlord, especially an attorney landlord, knowing that his tenant who had not been paying rent had just been granted a large settlement, would want from the tenant, the money due the tenant from the settlement. Respondent also represented Mr. Henderson in the State Farm Mutual claim, which put him in the unique position of knowing the potentiality for a judgment against Mr. Henderson in that case, which, in fact, occurred and benefitted respondent because he was then able to garnish Mr. Henderson's wages ahead of State Farm Mutual. Further, there is evidence to support that respondent did not tell Mr. Henderson of the potential for conflict or attempt to gain Mr. Henderson's consent to represent him in

light of the potential for conflict.[11] We overrule respondent's exception to his violation of Rule 1.7.

■■■ Rule 1.8(a) generally states that it is prohibited for a lawyer to enter into a business, financial or property transaction with a client. Subsections one and two of Rule 1.8 are conjunctive in nature and state that a lawyer cannot enter into a prohibited transaction *"unless:* (1) the transaction is fair and equitable to the client; *and* (2) the client is advised to seek the advice of independent counsel in the transaction and is given a reasonable opportunity to do so." (some emphasis added). The facts are simple, respondent was representing Mr. Henderson in the automobile negligence case against State Farm Mutual during the same time that he purchased Mr. Henderson's house. The hearing judge found that because respondent purchased the house at a foreclosure sale, subsection (1) of this rule was not violated because Mr. Henderson was not a party to that transaction. However, there was clear and convincing evidence that subsection (2) of this rule was violated. Mr. Henderson denied, at the hearing, that respondent ever suggested he seek the advice of independent counsel and the hearing judge rejected respondent's claims to the contrary. We affirm respondent's violation of Rule 1.8(a).

■■■ There is no merit to respondent's exception to Judge Holland's finding of a violation of Rule 1.8(j), which states that "[a] lawyer shall not acquire a proprietary interest in the cause of action or subject matter of litigation the lawyer is conducting for a client." The hearing judge concluded that respondent acquired a proprietary interest in Mr. Henderson's cause of action, *i.e.,* his bankruptcy proceedings, upon his purchase of Mr. Henderson's home, even via a foreclosure sale independent of Mr. Henderson. There is a link between the 2440 Keyworth Avenue property and Mr. Henderson's claims and the subject matter, his home, that could be involved in the litigation of his claims.

---

11. It is not the relationship of landlord and tenant that is by itself, improper; it is what may happen thereafter that may be improper and require the lawyer to terminate his representation.

Respondent, again, excepts to Judge Holland's finding that by virtue of his violations of Rules 1.5, 1.7 and 1.8 in the Henderson matters that he also by necessity violated Rule 8.4(a). We reiterate the reasoning we opined *supra* and affirm the hearing judge's conclusion regarding this rule violation. We overrule this exception.

### B. Petitioner's Exceptions to Findings of Fact and Conclusions of Law

Judge Holland concluded that petitioner failed to provide clear and convincing evidence to support its allegation that respondent violated MRPC 8.4(d) and that respondent did not engage in conduct prejudicial to the administration of justice. Citing *Harris, Mooney* and *Attorney Grievance v. Alison*, 349 Md. 623, 709 A.2d 1212 (1998) in its exceptions, petitioner contends that respondent's failure to appear at the scheduled court proceedings causing the Lewises' case to be dismissed because of non-appearance and respondent's seeking to "line his own pockets" by garnishing Mr. Henderson's wages, at the expense of Mr. Henderson, in the State Farm Mutual case serve as examples of conduct "breed[ing] disrespect for the Court and for the legal profession" and were prejudicial to the administration of justice, amounting to a violation of 8.4(d) in both matters. We agree.

An attorney's failure to adequately represent a client may violate Rule 8.4(d). *See Mooney*, 359 Md. at 83, 753 A.2d at 31; *Brown*, 353 Md. at 286, 725 A.2d at 1076. We held in *Ficker*, 319 Md. at 313–15, 572 A.2d at 505–06, that an attorney's tardiness or absence from a scheduled proceeding may violate former Code of Professional Responsibility Disciplinary Rule (DR) 1–102(A)(5), which contained virtually the same text as current MRPC 8.4(d). *See also Mooney*, 359 Md. at 83, 753 A.2d at 31; *Brown*, 353 Md. at 286, 725 A.2d at 1076. We explained in *Ficker*:

"[A]n attorney plays such an integral role in the judicial process that without his presence the wheels of justice must, necessarily, grind to a halt. The attorney's absence from the courtroom is immediately cognizable by the judge and

intrudes upon the operation and dignity of the court."
*Ficker,* 319 Md. at 315, 572 A.2d at 506. [Citation omitted.]

As we discussed, *supra,* respondent acknowledges in his
exceptions and in testimony before the hearing judge that he
failed to appear in court in the Lewis matter and we hold that
his representation of Mr. Henderson was prejudicial to the
administration of justice. Therefore, the hearing judge should
have concluded that he had violated MRPC 8.4(d) in the Lewis
and Henderson matters.

## IV. Conclusion

The only issue that remains is the appropriate
sanction to apply under the facts and circumstances of this
case having now determined that respondent violated MRPC
1.1, 1.3, 1.4(a) and (b), 1.5, 1.7, 1.8(a) and (j), 3.2, 8.4(a) and (d).
We have explained that "the purpose of disciplinary proceed-
ings is to protect the public rather than to punish the erring
attorney." *Attorney Grievance Comm'n v. Wallace,* 368 Md.
277, 289, 793 A.2d 535, 542 (2002)(quoting *Attorney Grievance
Comm'n v. Franz,* 355 Md. 752, 760–61, 736 A.2d 339, 343
(1999)). "Thus by sanctioning errant attorneys we seek to
'promote reliability and veracity in the legal profession and to
deter other attorneys from committing violations of the
MRPC.' " *Attorney Grievance Comm'n v. Angst,* 369 Md. 404,
416, 800 A.2d 747, 754–55 (2002) (quoting *Snyder,* 368 Md. at
274, 793 A.2d at 534). *Jeter,* 365 Md. at 290, 778 A.2d at 396
("[A] sanction is imposed to demonstrate to members of the
legal profession the type of conduct that will not be tolerat-
ed."). The severity of the sanction depends upon the nature
and extent of the attorney's misconduct in a given case. *See
Monfried,* 368 Md. at 397, 794 A.2d at 105; *Briscoe,* 357 Md.
at 568, 745 A.2d at 1044 (noting "[t]he gravity of misconduct is
not measured solely by the number of rules broken but is
determined largely by the lawyer's conduct")(quoting *Attorney
Grievance Commn. v. Milliken,* 348 Md. 486, 519, 704 A.2d
1225, 1241(1998)); *see also Powell,* 328 Md. at 300, 614 A.2d at
114; *Ficker,* 319 Md. at 315, 572 A.2d at 506 (The circum-
stances surrounding his failures are matters that go to the

severity of the sanction); *Attorney Grievance Comm'n v. Kemp,* 303 Md. 664, 680, 496 A.2d 672, 680 (1985).

In the case *sub judice,* Bar Counsel seeks respondent's disbarment. In support of the recommendation for disbarment, Bar Counsel cites the AMERICAN BAR ASSOCIATION STANDARDS FOR IMPOSING LAWYER SANCTIONS, § 9.22 (1991, 1992 Amendments). Section 9.22 sets forth factors which may be considered in aggravation for proposing an increase in the sanction for an attorney who has violated the ethical rules.[12] Petitioner alleges that respondents' prior disciplinary offenses, his pattern of misconduct and substantial experience in the practice of law, when coupled with his misconduct in the Lewis and Henderson matters warrant the most severe sanction of disbarment.

Recently in the case of *Garfield,* this Court indefinitely suspended an attorney who was found guilty of client neglect when coupled with other MRPC violations. While the facts in *Garfield* are unlike the facts of the case *sub judice,*[13] we stated in that case that "[i]n recent attorney grievance cases involving client neglect, we have imposed a number of different sanctions, ranging from disbarment . . . to indefinite suspension with the right to reapply after a specified period of time."

---

**12.** The ABA defines aggravating circumstances as follows:
"9.21 *Definition.* Aggravation or aggravating circumstances are any considerations, or factors that may justify an increase in the degree of discipline to be imposed.
"9.22 *Factors which may be considered in aggravation.*
Aggravating factors include:
    (a) prior disciplinary offenses;
    (b) dishonest or selfish motive;
    (c) a pattern of misconduct;
    (d) multiple offenses;
    . . .
    (i) substantial experience in the practice of law. . . ."

**13.** There, the disciplinary proceedings involved an attorney who had an escalating drug addiction, which caused his MRPC violations and the attorney was aware of his addiction, sought treatment, showed remorse, maintained a cooperative attitude with Bar Counsel and indicated a desire to remediate the consequences of his neglect. This attorney was given the right to reapply in thirty (30) days.

*Garfield,* 369 Md. at 103–04, 797 A.2d at 767–68 (citations omitted). We went on in *Garfield* to state:

"The application of varying sanctions in cases involving client neglect can be explained by this Court's appraisal of the mitigating and aggravating factors in the individual cases. Generally, if there are a number of mitigating factors present, or an absence of aggravating factors, we are apt to find that a less severe sanction will serve our stated purpose of protecting the public. . . . In cases involving the presence of highly aggravating factors, for instance where an attorney avoids, ignores, or does not cooperate with Bar Counsel or misappropriates client funds, we are more inclined to impose a more sever sanction than in those cases in which, for example, the attorney was cooperative with Bar Counsel throughout the attorney grievance process or did not misappropriate funds." *Id.* at 104–05, 797 A.2d at 768. [Citations omitted.]

This Court has held that indefinite suspension of attorneys for conduct similar to the conduct of respondent here, *i.e.* where there is clear and convincing evidence on the record of client neglect coupled with other MRPC violations, is appropriate. *See Attorney Grievance Comm'n v. Shaw,* 363 Md. 1, 766 A.2d 1028 (2001) (mandating a one-year suspension for an attorney who, among other things, performed services in an incompetent manner, charged an excessive fee and engaged in conduct prejudicial to the administration of justice); *Attorney Grievance Commn. v. Cassidy,* 362 Md. 689, 766 A.2d, 632 (2001) (indefinite suspension was the appropriate sanction for an attorney with a prior disciplinary history who failed to disclose to his clients that he was suspended from the practice of law and failed to respond to his client's repeated inquires as to the status of a document he was drafting for them, which supported a lack of diligence and communication required of Maryland attorneys); *Mooney,* 359 Md. 56, 753 A.2d 17 (2000) (imposing an indefinite suspension with the right to reapply in 90 days on an attorney for failing to appear in court for his client's trial, failing to communicate with his clients, failing to file a motion, failing to subpoena witnesses and obtain medical

records and making a false statement to a juvenile client's mother); *Zdravkovich,* 362 Md. 1, 762 A.2d 950 (2000) (indefinite suspension warranted for attorney who violated MRPC requiring attorneys to act with competence and diligence, communicate with clients, charge them reasonable fees and not interfere with the administration of justice);˙ *and Attorney Grievance Comm'n v. Brugh,* 353 Md. 475, 727 A.2d 913 (1999) (holding that an indefinite suspension with the right to reapply in 60 days was warranted for an attorney neglecting and failing to communicate with three clients).

Regarding aggravating factors, the record reveals that respondent has had four or five past disciplinary proceedings where this Court has had to address respondent's failure to advance the interest of his clients,[14] and multiple violations of the MRPC in the Lewis and Henderson matters involved in the proceedings *sub judice,* as well substantial experience in the practice of law. Respondent's misconduct in this matter is aggravated and we note his disciplinary past, his legal experience, the volume and severity of his current complaints and how unfavorably his combined actions reflect upon the legal profession. However, we also note that in Respondent's favor, there is no indication that he acted with a dishonest motive, he

---

14. As Judge Holland states in her Findings of Fact, respondent was previously sanctioned for violations of the MRPC and had previously appeared before that court on January 1, 2001 for a different hearing on a Petition for Disciplinary Action filed by the Attorney Grievance Commission. This most recent case is styled as *Attorney Grievance Commission of Maryland v. Alan Edgar Harris,* 366 Md. 376, 784 A.2d 516 (2001). In *Harris,* 366 Md. at 383, n. 6, 784 A.2d at 520, n. 6, petitioner's past disciplinary sanctions were noted, they include:

"(1) a reprimand by consent of this Court on 10 June 1999 relating to Respondent's violation of MRPC 1.3 and 1.4 concerning Respondent's failure to file suit on behalf of his client within the statute of limitations; (2) a reprimand on 9 April 1996 for Respondent's 'neglect of a client's legal matter and his failure to substantively communicate' with the client. *Attorney Grievance Comm'n v. Harris,* Misc. Docket (Subtitle BV), September Term, 1993 (unreported); and (3) a six month suspension on 30 July 1987 for various disciplinary violations, including 'neglect [ ][of] a legal matter' and 'fail[ure] to represent his client zealously.' *Attorney Grievance Comm'n v. Harris* [respondent], 310 Md. 197, 528 A.2d 895 (1987), *cert. denied,* 484 U.S. 1062, 108 S.Ct. 1020, 98 L.Ed.2d 985 (1988)." [Alteration added.]

has maintained a cooperative attitude throughout these proceedings with Bar Counsel, that the hearing judge did not find that respondent had violated all of the MRPC provisions alleged by Bar Counsel in these disciplinary proceedings and that there was evidence proffered by respondent at the hearing that he was experiencing severe familial and personal problems during the time that he violated the MRPC involved in this case. Our sanction of indefinitely suspending respondent, therefore, notes the particular circumstances of this case, but also gives due regard to our obligation to protect the public.

We hold that the appropriate sanction for respondent is an indefinite suspension. The indefinite suspension shall commence thirty days from the date of the filing of this opinion.

**IT IS SO ORDERED; RESPONDENT SHALL PAY ALL THE COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16–715(c), FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST ALAN EDGAR HARRIS.**

Dissenting Opinion by HARRELL, J., in which RAKER and BATTAGLIA, JJ., join.

I respectfully dissent. Although I fully agree with the Majority's analysis and disposition of the parties' exceptions, (Maj. op. 514 – 553), I conclude that Mr. Harris should be disbarred, as recommended by the Attorney Grievance Commission.

Prior to the present case, Respondent's disciplinary record as an attorney revealed the following:

(1) a six-month suspension on 6 November 2001 for conduct relating to two clients leading to violations of Maryland Rules of Professional Conduct (MRPC) 1.1 (competence), 1.3 (diligence in representation), 1.4(a) (communication with clients), 1.16(a)(2) (terminating representation), 3.2 (expediting litigation), and 8.4(d) (misconduct prejudicial to the

administration of justice). *See Attorney Grievance Comm'n v. Harris,* 366 Md. 376, 784 A.2d 516 (2001);

(2) a reprimand by consent of this Court on 10 June 1999 relating to Respondent's violation of MRPC 1.3 and 1.4 concerning Respondent's failure to file suit on behalf of his client within the statute of limitations;

(3) a reprimand on 9 April 1996 for Respondent's "neglect of a client's legal matter and his failure to substantively communicate" with the client. *Attorney Grievance Comm'n v. Harris,* Misc. Docket (Subtitle BV), September Term, 1993 (unreported); and

(4) a six month suspension on 30 July 1987 for various disciplinary violations, including "neglect [ ][of] a legal matter" and "fail[ure] to represent his client zealously." *Attorney Grievance Comm'n v. Harris,* 310 Md. 197, 528 A.2d 895 (1987), *cert. denied,* 484 U.S. 1062, 108 S.Ct. 1020, 98 L.Ed.2d 985 (1988).

Echoing through the above four grievance matters and the instant proceeding are recurring professional sins relating to competence and diligence. I am persuaded by this record that Mr. Harris does not "get it," i.e., the Maryland Rules of Professional Conduct.

Respondent imagines Petitioner desires "to do away with" him because he has been an "aggressive lawyer" for his clients over his 42 years at the Bar, which persona "may have rubbed some people the wrong way." [1,2] Harris implies that we should consider in fashioning a sanction in this matter that he has had a "very low incidence of sanctionable conduct" in light of the estimated "20,000 negligence cases" handled by him during his career.[3] One may surmise, however, from the absence

---

**1.** Respondent's Response To "Petitioner's Exceptions And Recommendation For Sanctions," pages 4–5.

**2.** Respondent fails to suggest who within the Commission's apparatus is Inspector Javert to his Jean Valjean.

**3.** Respondent's Response To "Petitioner's Exceptions And Recommendation For Sanctions," page 5, n. 1.

of a recommendation for sanction in his paper filings with the Court, that Respondent believes no sanction should flow from the misconduct found to have occurred in this matter.

Harris' arguments notwithstanding, we typically consider a non-exclusive list of factors in arriving at the appropriate sanction in such cases:

[A]bsence of a prior disciplinary record; absence of a dishonest or selfish motive; personal or emotional problems; timely good faith efforts to make restitution or to rectify consequences of misconduct; full and free disclosure to disciplinary board or cooperative attitude toward proceedings; inexperience in the practice of law; character or reputation; physical or mental disability or impairment; delay in disciplinary proceedings; interim rehabilitation; imposition of other penalties or sanctions; remorse; and finally, remoteness of prior offenses.

*Harris,* 366 Md. at 406, 784 A.2d at 533 (quoting *Attorney Grievance Comm'n v. Jaseb,* 364 Md. 464, 481–82, 773 A.2d 516, 526 (2001) (other citations omitted)). Harris does not fare well in an analysis of these criteria in the present case. Although many of the factors are inapplicable on this record, most of the remaining relevant ones work against Respondent. He has a substantial prior disciplinary record.[4] Respondent, unlike in his 2001 case, offers here no mitigating considerations based on his personal circumstances, nor did the hearing judge find that any existed.[5] Although Respondent seeks to turn his many years at the Bar to his benefit in this case, such fact also cuts against him in that he cannot find refuge in urging that his misconduct was occasioned by inexperience. To the contrary, he clearly should have known better. Re-

---

**4.** Petitioner points out that there is some overlap of the time periods of the misconduct in the 2001 action (misconduct occurred in 1997–98) and the present case (misconduct occurred in 1992–95 and 1997–99).

**5.** In *Harris,* 366 Md. at 387, 784 A.2d at 522, the hearing judge found, as facts, that Harris was preoccupied during May June of 1998 with the death of his mother and mother-in-law. This, the judge found, related to Harris' neglect of his professional responsibilities at that time. As noted, *supra,* no similar findings were made in the present case.

morse or rehabilitation do not seem to be concepts embraced by Respondent because his attitude permits only the notions that someone is out to get him and that, because he has handled as many cases as he has, his bouts of misconduct should be tolerated as the "very low incidence" that inferentially will occur in such a volume practice. I, for one, cannot subscribe to those values.

We do no service in protection of the public interest by treating tenderly lawyers in our State who urge acceptance of a certain amount of chronic misconduct in the areas of competence and diligence by virtue of the volume and type of cases they accept. Our proper role is to demonstrate to the members of the legal profession the type of conduct which will not be tolerated regardless of the nature or size of one's law practice. *Harris*, 366 Md. at 405, 784 A.2d at 532–33 (citations omitted). We do that best by disbarring Mr. Harris in recognition of his lifetime of underachievement with regard to the professional rules of conduct.

Judges RAKER and BATTAGLIA have authorized me to state that they join in this Dissent.