In re Scott G. SMITH, Debtor.

**Attorney Grievance Commission of Maryland, Plaintiff,**

**v.**

**Scott G. Smith, Defendant.**

**Bankruptcy No. 03–63389–SD. Adversary No. 03–5971–SD.**

United States Bankruptcy Court, D. Maryland.

Nov. 12, 2004.

See also 829 A.2d 567.

Raymond A. Hein, Esquire, Crownsville, MD, for plaintiff.

Scott G. Smith, West River, MD, pro se.

George W. Liebmann, Liebmann and Shively, Baltimore, MD, Chapter 7 Trustee.

### MEMORANDUM AND ORDER GRANTING PLAINTIFF'S CROSS–MOTION FOR SUMMARY JUDGMENT

E. STEPHEN DERBY, Bankruptcy Judge.

Before the court are cross motions for summary judgment by the Defendant Debtor, a disbarred attorney, and by Plaintiff, the Attorney Grievance Commission of Maryland. At issue is whether a monetary judgment for costs entered by the Court of Appeals of Maryland in Debtor's disciplinary proceeding is nondischargeable under 11 U.S.C. § 523(a)(7) as "a fine, penalty, or forfeiture to or for the benefit of a governmental unit, and is not compensation for actual pecuniary loss . . . ."

### Undisputed Facts

The Attorney Grievance Commission of Maryland (the "Commission") instituted a disciplinary action against Scott G. Smith, the Debtor and a lawyer, in the Court of Appeals of Maryland. See generally *Attorney Grievance Commission v. Smith*, 376 Md. 202, 829 A.2d 567 (2003). The Court of Appeals assigned the matter to a circuit court judge to conduct an evidentiary hearing and to make findings of fact and conclusions of law. *Id.* at 570. By clear and convincing evidence, the circuit judge found as to four different complaints that Mr. Smith wilfully misappropriated funds and had violated several provisions of the Maryland Rules, the Maryland

Code, and the Maryland Rules of Professional Conduct, relating to the maintenance of trust accounts. *Id.* at 572–583. Thereafter, Mr. Smith filed exceptions in accordance with the Maryland Rules, all of which were overruled by the Court of Appeals. The Court accepted all of the circuit court judge's findings and conclusions. *Id.* at 583–87, 829 A.2d 567. Finding Mr. Smith's conduct to be "egregious", the Court of Appeals imposed the sanction of disbarment. *Id.* at 589. The court summarized in the following manner.

> In light of the hearing judge's findings, respondent's numerous violations, his egregious conduct and this Court's consistent practice of disbarment of lawyers who, absent mitigation or extenuating circumstances, misappropriate client funds, we hold that the appropriate sanction for respondent's conduct is disbarment.

*Id.*

In addition to ordering Mr. Smith's disbarment, the Court of Appeals also rendered a judgment against Mr. Smith for costs, which is set forth below:

> RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING THE COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16–715(c), FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION OF MARYLAND AGAINST SCOTT G. SMITH.

*Id.*[1]

The Statement of Costs taxed by the Clerk was in the aggregate amount of $6,903.76. A list of seventeen items and the costs attributable to those items appears on the face of the slip opinion filed on July 30, 2003. Misc. Dkt. AG No. 16, Sept. Term 2002. The items listed are actual costs of the Commission.[2]

On September 9, 2003, Mr. Smith filed his petition for relief under Chapter 7. Thereafter, the Commission timely filed its complaint commencing this proceeding to seek a determination that its judgment for costs is not dischargeable under 11 U.S.C. § 523(a)(7) because it is a fine or penalty payable to or for the benefit of a governmental unit.

**Summary Judgment Standard**

Pursuant to Fed.R.Civ.P. 56(c), made applicable by Fed. R. Bankr.P. 7056, summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). *See also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

It is appropriate to decide this case as a matter of summary judgment because there are no material factual disputes. The material facts are a matter of public record, and the Commission acknowledges that the judgment of costs was derived from the amount of its costs. All that is left for resolution is whether the Commission is entitled to judgment as a matter of law.

**Discussion**

In response to the complaint, Debtor filed a motion for summary judgment in which he argues that the judgment of costs

---

**1.** Maryland Rule 16–715 is no longer in effect, having been amended by Maryland Rule 16–761 under the November 30, 2000, amendments of the Rules, effective July 30, 2001.

**2.** By way of example, some of the items include Federal Express charges, the cost of the court reporter, of issuing subpoenas and producing transcripts of the court proceedings.

is "compensation for a pecuniary loss" and, therefore, it is specifically exempt from 11 U.S.C. § 523(a)(7). The factual basis for Debtor's argument is that the judgment of costs was determined by calculating the Commission's actual costs in pursuing its disciplinary action against Debtor.

Plaintiff filed a Response and Cross–Motion For Summary Judgment, to which Debtor has not responded. In its Cross–Motion for Summary Judgment, Plaintiff acknowledges that the judgment of costs entered against Debtor was based on the amount of costs incurred by the Commission in pursuing the disciplinary action against the Debtor. However, the Commission argues that the judgment against Debtor is in the nature of a fine or penalty owed to a governmental unit. Consequently, the Commission contends it is nondischargeable.

■ The Court's analysis begins with 11 U.S.C. § 523. It provides, in pertinent part:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt–
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> (7) to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss, other than a tax penalty. . . .

11 U.S.C. § 523(a)(7). For a debt to be nondischargeable under § 523(a)(7), three elements must be present: (1) the debt must be payable to and for the benefit of a governmental unit; (2) it must be in the nature of a fine, penalty, or forfeiture; and (3) it must not be compensation for actual pecuniary loss. *See In re Hollis*, 810 F.2d 106, 108 (6th Cir.1987) (citing *Kelly v. Robinson*, 479 U.S. 36, 107 S.Ct. 353, 361–62, 93 L.Ed.2d 216 (1986)). Because this Court finds that the Commission is a governmental unit, and that the judgment for costs is a penalty and not compensation for actual pecuniary loss, the debt is nondischargeable pursuant to 11 U.S.C. § 523(a)(7).

### (1)

■ The first element requires a determination whether the Commission is a governmental unit. A "governmental unit" is defined in the Bankruptcy Code as:

> United States; State; Commonwealth; District; Territory; municipality; foreign state; department, agency, or instrumentality of the United States (but not a United States trustee while serving as a trustee in a case under this title), a State, a Commonwealth, a District, a Territory, a municipality, or a foreign state; or other foreign or domestic government.

11 U.S.C. § 101(27).[3]

Courts from other jurisdictions considering the issue have overwhelmingly found that entities charged with overseeing attorney disciplinary matters are governmental units within the meaning of 11 U.S.C. § 523(a)(7). *E.g., Betts v. Attorney*

---

**3.** The legislative history of 11 U.S.C. § 101(27) suggests that the definition of a "governmental unit" was intended to be construed in the "broadest sense." H.R.Rep. No. 595, 95th Cong., 1st Sess. 311 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5963, 5992. However, the entity must be performing a governmental function. A " '[d]epartment, agency or instrumentality' does not include entities that owe their existence to State action such as the granting of a charter or license but that have no other connection with a State or local government. . . . The relationship must be an active one in which the department, agency, or instrumentality is actually carrying out some governmental function." *Id.*

*Registration and Disciplinary Comm'n,* 165 B.R. 870, 873 (N.D.Ill.1994); *In re Borowski,* 216 B.R. 922 (Bankr.E.D.Mich. 1998); *In re Haberman,* 137 B.R. 292, 294 (Bankr.E.D.Wis.1992); *Fla. Bar v. Cillo (In re Cillo),* 159 B.R. 340, 342 (Bankr. M.D.Fla.1993); *In re Williams,* 158 B.R. 488, 490 (Bankr.D.Idaho 1993). *Cf. Wade v. State Bar of Arizona (In re Wade),* 948 F.2d 1122, 1123 (9th Cir.1991) (holding that a state bar association was a governmental unit for purposes of 11 U.S.C. § 362(b)(7)). These opinions rely primarily on the functional role of bar associations and disciplinary commissions in protecting the public interest and acting as an arm or agent of the courts. *See, e.g., Betts,* 165 B.R. at 873 (stating that because the plaintiff, the Attorney Registration and Disciplinary Commission, was an agent of the supreme court of the state in administering its disciplinary function, "there is no question that the Plaintiff is an agency of the State of Illinois and thus a 'governmental unit' "); *In re Haberman,* 137 B.R. at 294 ("It is fundamental that the Wisconsin Supreme Court, as the highest state tribunal of the Wisconsin judicial branch, is itself a governmental unit. BAPR, created as an arm of the Wisconsin Supreme Court, is an agency or instrumentality of a governmental unit within the clear contemplation of § 101(27) of the Bankruptcy Code."); *In re Williams,* 158 B.R. at 490 ("The Bar is a self-governing state agency established by statute to supervise the granting, and to regulate the exercise of, the privilege of practicing law in the State of Idaho. [citation omitted]. The Idaho Supreme Court holds ultimate authority concerning the admission and practice of attorneys in this State's courts. While the Bar is not necessarily an arm of the Idaho Supreme Court, it satisfies the Bankruptcy Code's definition of a governmental unit in its own right as an agency of the State of Idaho, see 11 U.S.C. § 101(27), in that the Bar carries out many functions normally associated with the government, including protecting the public from the unprofessional, improper and unauthorized practice of law.") *See also In re Wade,* 948 F.2d at 1123 (in analyzing whether the state bar was a governmental unit under 362(b)(4), the court states that the state bar is a governmental unit because it is an instrumentality of the Arizona Supreme Court, the court exercises a significant degree of control over the disciplinary proceedings of the bar, and the purpose of the proceedings is in enforcing the regulatory or police power of the court.)

■ The application of this standard makes it clear that the Commission is a governmental unit. The Court of Appeals, in the exercise of its inherent and fundamental judicial powers, supervises, regulates and controls the activities of lawyers. *Maryland State Bar Ass'n v. Boone,* 255 Md. 420, 258 A.2d 438, 443 (1969). The Court of Appeals through the Maryland Rules created the Commission and appoints its members. Md. Rule 16–711(a). The Commission, through Bar Counsel, "investigates professional misconduct or incapacity; ... files and prosecutes disciplinary and remedial proceedings; ... monitors and enforces compliance with disciplinary and remedial orders of the Court of Appeals" among other things. Md. Rule 16–712. In carrying out its duties, the Commission serves an important government function in protecting the public, deterring lawyers from engaging in violations of the Maryland Rules of Professional Conduct, and maintaining the integrity of the legal profession. *Attorney Grievance Commission v. Clark,* 363 Md. 169, 767 A.2d 865, 873 (2001); *Attorney Grievance Commission v. Awuah,* 346 Md. 420, 697 A.2d 446, 454 (1997); *Attorney Grievance Comm'n v. Howard,* 282 Md. 515, 385 A.2d 1191 (1978); *Attorney Grievance*

*Comm'n v. Green,* 278 Md. 412, 365 A.2d 39 (1976). The Commission explicitly operates under the confines of the Maryland Rules as created by the Court of Appeals and can only impose sanctions as set forth therein. Lastly, although the Commission maintains the discretion of whom to prosecute for violations, the Maryland Court of Appeals has original and exclusive jurisdiction and retains final authority to determine the outcome of disciplinary proceedings. *Attorney Grievance Comm'n v. Kent,* 337 Md. 361, 653 A.2d 909 (1995); *Attorney Grievance Comm'n of Maryland v. Harris,* 371 Md. 510, 810 A.2d 457 (2002); Md. Rule 16–759. The Maryland Rules adopted by the Court of Appeals and made applicable to the Commission and its activities demonstrate that the Commission functions as an agent or arm of the Court of Appeals of Maryland, and it is therefore a governmental unit. Furthermore, the Commission serves an important government function in enforcing the statutory prohibitions against attorney misconduct, further meeting the definition of governmental unit. *See In re Wade,* 948 F.2d at 1123.

(2)

The second element requires consideration whether the judgment for costs is in the nature of a fine, penalty or forfeiture. Most courts have concluded that debts owed by an attorney as a result of disciplinary actions are nondischargeable under § 523(a)(7). *In re Bertsche,* 261 B.R. 436 (Bankr.S.D.Ohio 2000); *Carlson v. Attorney Registration & Disciplinary Comm'n,* 202 B.R. 946 (Bankr.N.D.Ill.1996); *State Bar v. Doerr (In re Doerr),* 185 B.R. 533 (Bankr.W.D.Mich.1995); *Fla. Bar v. Cillo (In re Cillo),* 159 B.R. 340 (Bankr.M.D.Fla. 1993); *Betts,* 165 B.R. 870; *In re Williams;* 158 B.R. 488 (Bankr.D.Idaho 1993); *Attorney Registration & Disciplinary Comm'n v. Lewis (In re Lewis),* 151

B.R. 200 (Bankr.C.D.Ill.1992); *Bd. of Attorneys Prof'l Responsibility v. Haberman (In re Haberman),* 137 B.R. 292 (Bankr. E.D.Wis.1992). *But see, In re Taggart,* 249 F.3d 987 (9th Cir.2001) (holding that only the monetary judgment attributable to monetary sanctions, and not costs, is excepted from discharge).

The rationale for these decisions is drawn from the decision in *Kelly v. Robinson,* 479 U.S. 36, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986). In *Kelly,* the United States Supreme Court considered whether an order to pay restitution in a criminal proceeding created a dischargeable debt under 11 U.S.C. § 523(a)(7). *Kelly* involved a debtor who attempted to discharge a restitution order entered as a condition of her probation. After determining that the language of § 523(a)(7) is subject to interpretation, the Supreme Court broadly construed § 523(a)(7) as excepting from discharge "any condition a state criminal court imposes as part of a criminal sentence." *Id.* at 50, 107 S.Ct. 353. The Supreme Court recognized that the decision to impose restitution is premised on state penal goals, and not to obtain compensation. It held that § 523(a)(7) created a "broad exception for all penal sanctions," concluding that restitution orders are sufficiently penal in nature to fall under 11 U.S.C. § 523(a)(7).

The Court of Appeals for the Sixth Circuit considered the question of dischargeability of costs arising out of a criminal proceeding in *In re Hollis,* 810 F.2d 106 (6th Cir.1987). In *Hollis* the Sixth Circuit reversed the bankruptcy and district courts which had ruled that, under Tennessee law, costs could not be considered a part of the penalty, and were instead intended as compensation for pecuniary loss. The Sixth Circuit concluded that the case was controlled by *Kelly* and reversed. *Id.* at 109. The *Hollis* court reached its deci-

# 309

sion even though it was faced with a statute that specifically stated costs " 'shall not be deemed part of the penalty imposed in a criminal case.' " *Id.* at 108 (citing Tenn. Code Ann. § 40–24–105(b) (1982)). Finding that the costs were assessed against the defendant as a condition of his probation, the Sixth Circuit determined that the debt was part of the penalty under the *Kelly* analysis. "The [*Hollis*] Court concluded that the Tennessee Code's provision stating that costs 'shall not be deemed part of the penalty' was 'displaced in this instance by the more specific provisions of [the section allowing costs to be assessed as part of probation].' " *In re Thompson,* 16 F.3d 576, 581 (4th Cir.1994) (discussing *Hollis*).

In *U.S. Dept. of Housing & Urban Development v. Cost Control Marketing & Sales Management of Virginia, Inc.,* 64 F.3d 920 (4th Cir.1995), the Court of Appeals for the Fourth Circuit held that a restitution order payable to HUD was nondischargeable, although HUD measured its disgorgement remedy by the amount lot purchasers had lost and although HUD would ultimately pay some of the recovery to individual victims of defendants' illegal activities. *Id.* at 928. The court stated "that so long as the government's interest in enforcing a debt is *penal,* it makes no difference that injured persons may thereby receive compensation for pecuniary loss." *Id. See also In re Thompson* 16 F.3d at 581 (even where a debt is intended to help defray the expense of government, it may not be discharged if its primary purpose is penal). *But see, In re Wilson,* 299 B.R. 380 (Bankr.E.D.Va.2003) (holding that a criminal proceeding resulting in entry of order for restitution payable directly to the victim in an amount to be determined at a later civil trial was dischargeable).

■ The rationale of *Kelly* and its progeny may be extended to attorney disciplinary proceedings. The ultimate goal of both criminal and attorney disciplinary proceedings is to protect the public. The imposition of sanctions and costs protects the public by restricting a lawyer's right to practice law when warranted. Monetary penalties imposed against the offender, whether part of an attorney disciplinary proceeding or a criminal proceeding, promote the state's penal and rehabilitative interests. *See In re Cillo,* 159 B.R. at 343.

The Court of Appeals for the Ninth Circuit reached a contrary conclusion with respect to costs in attorney disciplinary proceedings in *In re Taggart,* 249 F.3d 987 (9th Cir.2001). In *Taggart* the court held that, although monetary sanctions imposed under California law against a disciplined attorney are nondischargeable, a judgment of costs is dischargeable. *Id.,* 249 F.3d at 994. The *Taggart* court, relying heavily on the legislative intent of two separate statutory provisions that both allowed for the imposition of a monetary judgment in attorney discipline proceedings, intended to distinguish between those monetary judgments that constituted actual costs and those that were more penal in nature, allowing for discharge of the former and not the latter. *Id.* at 994 ("However, where, as here, the structure of the statutes imposing fees on disciplined attorneys, the existence of mandatory fees in the civil context, and the legislative history of the statute imposing monetary sanctions on disciplined attorneys all indicate that California does not view the assessment of costs on disciplined attorneys as penal in nature, analogy to the criminal context is inapt.")

The Maryland statutory scheme, much like the California statutes in *Taggart,* provides for both the conditional imposition of costs as part of a disciplinary order,

and a separate judgment for all costs to be awarded to the prevailing party. *Compare* Md. Rules 16–721 *and* 16–760(7), *with* Md. Rule 16–761. There are two distinguishing features, however, regarding the Maryland scheme. First, although the Maryland Rules allow for two methods of imposing a monetary judgment, one as a condition and the other not, the Court of Appeals considers both to be conditions to reinstatement. Therefore, these two independent ways to impose a monetary judgment are indistinguishable in purpose and effect under the regulatory scheme in Maryland. *See Attorney Grievance Comm'n v. Santos,* 370 Md. 77, 803 A.2d 505, 511 (2002); *Attorney Grievance Commission of Maryland v. Black,* 362 Md. 574, 766 A.2d 119, 123 (2001) (the court states that it will not impose a specific condition of reinstatement, "except the payment of costs, a condition in any event, whether stated or not, preferring to reserve ourselves the broadest discretion to review, at the time of application, the respondent's fitness for reinstatement.").

Second, the Court of Appeals established rules that entitle a prevailing party to costs, and a respondent is typically required to pay costs when a judgment is entered against him or her in a disciplinary proceeding. Before the November, 2000 amendments, Maryland Rules provided that "all court costs . . . shall be paid by the State unless the Court of Appeals shall direct otherwise." Md. Rule 16–715 (repealed 2001). Despite the presumption that the Commission was required to pay costs, a judgment for costs was uniformly entered in favor of the Commission and against respondents when the Commission was successful in prosecuting the action. This presumption was shifted by the amendments, a shift that is consistent with the Court's prior practice, and with its articulated view that the payment of costs is a condition to reinstatement. A judg-

ment for costs is thus more like a penalty or monetary sanction assessed against a losing party as part of the sanction. See Md. R. 16–761, which is derived from former rule 16–715. *Accord In re Thompson,* 16 F.3d at 579 (holding that costs imposed on defendant convicted of a crime are not dischargeable under § 523(a)(7) because they are penal in nature and only incurred by those convicted, and despite the fact that costs may also separately be conditioned on probation); *In re Hollis,* 810 F.2d at 108.

■ The Court of Appeals of Maryland has on numerous occasions explained the purpose of imposing sanctions. The court states that the purpose is not to punish the attorney, but to protect the public by deterring other attorneys from committing a similar offense. *Attorney Grievance Comm'n v. Chasnoff,* 366 Md. 250, 783 A.2d 224, 236 (2001) ("The purpose of disciplinary proceedings against an attorney is . . . to protect the public rather than to punish the attorney who engages in misconduct. That purpose is achieved 'when sanctions are imposed that are commensurate with the nature and gravity of the violations and the intent with which they were committed.' In other words, a sanction is imposed to demonstrate to members of the legal profession the type of conduct that will not be tolerated." *quoting Attorney Grievance Comm'n v. Jeter,* 365 Md. 279, 778 A.2d 390 (2001)). An additional goal recognized by the Court of Appeals for imposing conditions as part of a disciplinary order is to protect the public by rehabilitating the attorney. *See Attorney Grievance Comm'n v. Reid,* 308 Md. 646, 521 A.2d 743, 745–46 (1987) (after determining the appropriate sanction "focus shifts to questions of rehabilitation and the imposition of conditions sufficient to protect the public if the lawyer is allowed to resume practice.")

These two goals, deterrence and rehabilitation, are the same goals the Supreme Court sought to protect in allowing restitution orders in criminal proceedings to be excepted from discharge. *Kelly*, 479 U.S. at 49, 107 S.Ct. 353 (The prospect of forcing states and individuals to defend the issue of dischargeability of restitution orders "would hamper the flexibility of state criminal judges in choosing the combination of imprisonment, fines and restitution most likely to further the rehabilitative and deterrent goals of state criminal justice systems. [footnote omitted] We do not think Congress lightly would limit the rehabilitative and deterrent options available to state criminal judges.") Consequently, while *Taggart* is instructive in distinguishing between costs that represent actual compensation for pecuniary loss and those that are penal in nature, it is not the physical statutory separation of the two costs that creates a presumption that one is penal and the other is not, but rather, the purpose and effect of imposing these costs on the malfeasor, and whether their imposition furthers the deterrence and rehabilitative goals of the state. Since the purpose of imposing costs on the sanctioned attorney is to protect the public by serving the deterrence and rehabilitative goals of the Commission, the judgment for costs falls within the broad scope of a penalty as articulated by the Supreme Court and for the purposes of 11 U.S.C. § 523(a)(7).

■ Relying on the Fourth Circuit's opinion in *In re Thompson*, 16 F.3d 576, the Debtor argues that the assessment of costs against him is dischargeable because it did not arise out of a criminal proceeding. The Debtor reads *Thompson* too narrowly. In *Thompson* the debtor was convicted of a felony in Virginia, sentenced to the state penitentiary, and ordered to pay the costs of his prosecution. Under Virginia law, the costs were defined as nonpenal. Nevertheless, citing *Kelly v. Robinson*, the Fourth Circuit concluded that for purposes of § 523(a)(7) the costs were penal in nature because they were imposed as part of the criminal process. They are assessed only against those defendants who are convicted, and the debt is not incurred absent a conviction. *Thompson*, 16 F.3d at 577–79. The rationale of *Thompson*, however, is not limited to criminal convictions, but rather it is equally applicable to other proceedings of a penal nature that are brought by a governmental entity.

Such a broad reading of § 523(a)(7) is illustrated by *Cost Control Marketing & Sales Management*, 64 F.3d 920. In the *Cost Control Marketing* case the U.S. Department of Housing and Urban Development ("HUD") obtained a judgment jointly and severally against three individual debtors ordering them to disgorge to it $8.65 million in estimated, ill-gotten profits for violating the Interstate Land Sales Full Disclosure Act. The court rejected the debtors' argument that their discharge barred entry of the disgorgement order, in part "because discharge in bankruptcy is not intended to be a haven for wrongdoers, . . . ." *Id.* at 927. The court stated:

The Supreme Court has given § 523(a)(7) a broad reading, and has held that it applies to all criminal *and civil penalties*, even those designed to provide restitution to injured private citizens. *Kelly v. Robinson*, 479 U.S. 36, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986) (criminal restitution obligation was not dischargeable); *Pennsylvania Dep't of Public Welfare v. Davenport*, 495 U.S. 552, 562, 110 S.Ct. 2126, 2132–2133, 109 L.Ed.2d 588 (1990) (stating that § 523(a)(7) applies to both criminal *and civil fines*). We interpret these cases to say that so long as the government's interest in enforcing a debt is *penal*, it

makes no difference that injured persons may thereby receive compensation for pecuniary loss.

*Id.* at 927–28. (Underlined emphasis supplied.)

There is no language in § 523(a)(7) that requires the fine, penalty or forfeiture to be criminal in nature to be excepted from discharge. See 4 Alan Resnick, et al., Colliers on Bankruptcy ¶ 523.13[2] (15th ed.2001), in which the author states: "the text of section 523(a)(7) does not distinguish between criminal and civil fines, penalties and forfeitures. Therefore, the discharge exception extends to both categories of such liabilities." *See also* Black's Law Dictionary 1153 (7th ed. 1999) (The legal dictionary definition of penalty allows that "though usually for crimes, penalties are also sometimes imposed for civil wrongs.") Defendant's argument that the assessment of costs must arise out of a criminal proceeding to be nondischargeable is without substance. All that is required is that the costs awarded are in a proceeding that is penal in nature, either criminal or civil. An attorney disciplinary proceeding, although not criminal, is penal in nature. Sanctions are imposed and costs assessed to serve the goal of protecting the public through deterrence and rehabilitation.

(3)

■■■ As to the final element, the Court finds the judgment for costs is not compensation for actual pecuniary loss within the meaning of 11 U.S.C. § 523(a)(7) for several reasons. First, as discussed previously, the primary purpose for imposing costs is penal, and not compensatory, in that an attorney's rehabilitation is encouraged through the condition to reinstatement imposed by the judgment. The mere fact that a penal sanction is calculated by reference to actual costs does not, in and of itself, transform the penalty

into compensation for pecuniary loss. "Even where a debt is intended to help defray the expense of government, it may not be dischargeable if its primary purpose is penal. *E.g., In re Thompson,* 16 F.3d 576 (4th Cir.1994) (court costs assessed against convicted criminal defendant were not dischargeable)." *Cost Control Marketing and Sales Mgmt.,* 64 F.3d at 928, n. 13. In *Thompson* the court explained:

All those terms and conditions suggest that the assessment of costs is understood by the Commonwealth as operating hand-in-hand with the penal and sentencing goals of the criminal justice system. The practical operating of the cost-assessment can only be understood in the penal context. Consequently, while for state law purposes these costs may be considered other than penal, for the purposes of the Bankruptcy Code the costs appear as a "condition a state criminal court imposes as part of a criminal sentence." *Kelly,* 479 U.S. at 50, 107 S.Ct. at 361.

*In re Thompson,* 16 F.3d at 580. The fact that the judgment for costs was based on actual costs incurred by the Commission does not alter the conclusion that the costs flow from the disbarment sanction and are therefore penal in nature.

Second, what the Commission expends to fulfill its governmental function to pursue disciplinary or remedial actions against attorneys is not an "actual pecuniary loss". The Commission is funded from annual assessments of attorneys set by the Court of Appeals. Md. Rule 16–714. It will carry out its disciplinary functions regardless of whether it recovers costs awarded to it. The Commission is fulfilling a public function of government in bringing attorney disciplinary proceedings. The cost of performing such a governmental function is not an actual pecuniary loss to the State. In concluding that the costs of a criminal

conviction were not dischargeable, the court in *In re Zarzynski,* 771 F.2d 304, 306 (7th Cir.1985), summarized its reasoning as follows: "There is no county pecuniary loss when the county functions as it should in the furtherance of its public responsibilities.... Nor does the fact that the costs are based on what the county expended in the criminal trial convert the costs into 'compensation for actual pecuniary loss.'" Similar reasoning has been adopted by other courts in concluding that an award of costs in an attorney disciplinary proceeding does not constitute compensation for actual pecuniary loss. *See In re Betts,* 165 B.R. at 874, affirming 149 B.R. 891, 896 (Bankr.N.D.Ill.1993); *In re Haberman,* 137 B.R. at 295–96; *In re Lewis,* 151 B.R. at 203; *In re Cillo,* 159 B.R. at 343, affirmed 165 B.R. 46, 49 (M.D.Fla.1994).

Finally, there are strong public policy reasons for holding that an award of costs in an attorney disciplinary proceeding is nondischargeable. It is in the public's best interest to prevent attorneys who violate professional rules of conduct from eluding punishment for professional improprieties by filing for bankruptcy. *See In re Williams,* 158 B.R. 488 (Bankr.D.Idaho 1993). Consequently, the court finds that the award of costs under Md. Rule 16–761 is not dischargeable under 11 U.S.C. § 523(a)(7).

It is, therefore, by the United States Bankruptcy Court for the District of Maryland,

ORDERED, that the Cross–Motion for Summary Judgment by the Attorney Grievance Commission of Maryland is GRANTED; and it is further

ORDERED, that the judgment for costs against Scott G. Smith in the case of *Attorney Grievance Commission v. Smith* in the Court of Appeals of Maryland, Misc. Dkt. AG No. 16, Sept. Term 2002 is NON-DISCHARGEABLE; and it is further

ORDERED, that the Debtor's Motion for Summary Judgment is DENIED.