[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-13817

_____

D.C. Docket No. 1:11-cv-23230-KAM,
Bkcy No. 11-bkc-14166-AJC

IN RE: ALLEN L. FEINGOLD,                                    Debtor,

_____

THE DISCIPLINARY BOARD OF THE SUPREME
COURT OF PENNSYLVANIA,

Plaintiff-Appellee,

versus

ALLEN L. FEINGOLD,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(September 17, 2013)

Before HULL and MARTIN, Circuit Judges, and HINKLE,[*] District Judge.

PER CURIAM:

Allen Feingold, a Chapter 7 debtor, appeals the district court's reversal of the bankruptcy court's order denying relief from the automatic stay to the Disciplinary Board of the Supreme Court of Pennsylvania (the "Disciplinary Board"). This appeal presents the question of whether a debt's dischargeability in bankruptcy proceedings—standing alone—constitutes "cause" sufficient for a bankruptcy court to provide relief from the automatic stay provisions of 11 U.S.C. § 362(a). We conclude that the debt is nondischargeable, but that the district court erroneously relied solely on the debt's dischargeability status in its ruling on the "cause" issue. We therefore affirm the district court's order in part, and vacate and remand in part for further proceedings.

## I.  BACKGROUND

Before discussing Feingold's Chapter 7 bankruptcy proceedings, we provide a brief overview of the relevant background to put into context the issue that arose between the Disciplinary Board and Feingold during his bankruptcy proceedings.

### A.    Factual Background

---

[*]Honorable Robert L. Hinkle, United States District Judge for the Northern District of Florida, sitting by designation.

2

In August 2008, Feingold was disbarred from the practice of law in the Commonwealth of Pennsylvania.

In August 2009, the Disciplinary Board filed a complaint in Pennsylvania state court seeking to (1) enjoin Feingold from the unlawful practice of law, and (2) appoint a conservator to take possession of Feingold's client files and take other steps to protect Feingold's clients.

On February 18, 2011, following a trial, the Pennsylvania state court entered a final judgment against Feingold. The state court determined that the appointed conservator had (1) "faithfully carried out his duties"; (2) "protected the interests of those who may have had some legal contact with, or representation by, [Feingold]"; (3) "faithfully protected the integrity of the profession"; and (4) "took all necessary means to notify anyone who may have had an interest in the matter."

The state court judgment also assessed Feingold $44,889.92 for the costs and expenses associated with the appointed conservator and the disciplinary proceedings, pursuant to Rule 208(g) of the Pennsylvania Rules of Disciplinary Enforcement. This Rule provides that "[t]he Supreme Court in its discretion may direct that the necessary expenses incurred in the investigation and prosecution of a proceeding which results in the imposition of discipline shall be paid by the respondent-attorney." PA. R.D.E. 208(g)(1).

3

**B.**    **Feingold's Bankruptcy and the Disciplinary Board's Motion for Relief from the Automatic Stay**

On the same day the Pennsylvania state court entered its judgment—February 18, 2011 (the "Petition Date")—Feingold filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code. After the Petition Date, the automatic stay provisions of the Bankruptcy Code went into effect. See 11 U.S.C. § 362(a) (providing that a filed petition operates as a stay against, inter alia, "the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title," id. § 362(a)(2)).

On March 30, 2011, the Disciplinary Board filed a "Motion for Relief from the Automatic Stay" in the bankruptcy court, requesting relief from the automatic stay in order to enforce its judgment and terminate the disciplinary proceedings against Feingold. The Disciplinary Board argued that the automatic stay did not apply to actions taken against a debtor when those actions were performed pursuant to a governmental unit's police or regulatory powers. See 11 U.S.C. § 362(b)(4) ("[T]he filing of a petition . . . does not operate as a stay. . . . [against] the enforcement of a judgment[,] other than a money judgment, obtained in an action or proceeding by [a] governmental unit to enforce such governmental unit's or organization's police or regulatory power.")

4

The Disciplinary Board contended that its attorney disciplinary proceedings fell within this § 362(b)(4) exception to the automatic stay, that the "monetary component of the [j]udgment was ancillary to the disciplinary proceedings and simply designed to reimburse the Board and the Conservator for the costs associated with their many years of litigation against [Feingold]," and that the Disciplinary Board therefore should be permitted to move forward with collecting on the judgment against Feingold.

In the event that the bankruptcy court found that the § 362(b)(4) exception was inapplicable, the Disciplinary Board alternatively requested relief from the automatic stay under the more general "for cause" exception in § 362(d)(1). See 11 U.S.C. § 362(d)(1) ("On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay . . . for cause, including the lack of adequate protection of an interest in property of such party in interest." (emphasis added)).

On this "cause" ground, the Disciplinary Board argued that although the Bankruptcy Code did not define "cause," "serving the citizenry of the Commonwealth of Pennsylvania and especially [Feingold's] former clients by returning their files and otherwise winding up the disciplinary process and ending nearly 5 years of litigation still pending outside of Florida is sufficient cause to grant stay relief."

5

Feingold opposed the Disciplinary Board's motion for relief from the automatic stay. Feingold maintained that the Disciplinary Board had taken actions harmful to his bankruptcy estate by depriving it of files, referral fees, reimbursement of costs and fees, and claims that he possessed. In addition, Feingold argued that he sought only to stay the collection of money and destruction of his property, which did not involve protecting the public. He also noted that § 362(b)(4) provided that the government was subject to the automatic stay to the extent it sought a monetary recovery. Further, Feingold contended that because the Disciplinary Board's monetary claims against him were likely dischargeable, there was no basis to permit the Disciplinary Board to resume collection attempts, as no other disciplinary claims were pending against him.

## C.    The Bankruptcy Court's Order Denying Relief

After a hearing, the bankruptcy court denied the Disciplinary Board's motion for relief from the automatic stay. The bankruptcy court explained that if the judgment's award of costs and expenses was "compensation for actual pecuniary loss," then the debt imposed by the judgment would be dischargeable and the stay would apply to it. However, if the Disciplinary Board could show, pursuant to 11 U.S.C. § 523(a)(7), that the debt was instead a nondischargeable "fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and [was] not compensation for actual pecuniary loss," then there may be "cause

sufficient to lift the automatic stay" and allow the Board to proceed with collection.

The bankruptcy court then found that the $44,889.92 judgment was entered "to reimburse the costs of litigation, rather than to fine or penalize [Feingold]." See In re Taggart, 249 F.3d 987, 989 (9th Cir. 2001) (holding that costs owed to the State Bar of California as the result of attorney disciplinary proceedings were for "actual pecuniary loss," and were therefore dischargeable in bankruptcy proceedings).[1]  The bankruptcy court noted that Pennsylvania Rule of Disciplinary Enforcement 208(g), used as the basis for the imposition of costs against Feingold, did not mandate that costs be imposed on a disciplined attorney, but instead left the imposition of costs to the discretion of the court.  In so characterizing the monetary judgment, the bankruptcy court also looked to the Disciplinary Board's motion for relief from the automatic stay, in which the Disciplinary Board had explained that the monetary component of the judgment against Feingold was designed "to reimburse the State Bar for the litigation costs." (emphasis added).

---

[1]Although Taggart is still technically good law, it was effectively overruled by the California legislature, which amended its attorney disciplinary statutes in 2003 to expressly provide that the costs in attorney disciplinary proceedings were "to promote rehabilitation and to protect the public, rather than to provide compensation."  In re Findley, 593 F.3d 1048, 1052–53 (9th Cir. 2010) (internal quotation marks omitted).  After Findley, "attorney disciplinary costs imposed by the California State Bar Court . . . are excepted from discharge in bankruptcy."  Id. at 1054.

7

Therefore, because the judgment "appear[ed] to be compensation for a pecuniary loss," i.e., it was imposed to reimburse the Disciplinary Board rather than to serve as a "fine, penalty, or forfeiture," the bankruptcy court found that the debt was dischargeable in Feingold's bankruptcy proceedings. And, because the debt was dischargeable, the bankruptcy court denied the Disciplinary Board's motion for relief from the automatic stay.

**D.    The Disciplinary Board's Appeal to the District Court**

The Disciplinary Board appealed the bankruptcy court's order denying relief from the automatic stay to the district court, which reversed the bankruptcy court's order.

The district court held that the costs imposed by the judgment in Feingold's disciplinary proceedings fell within the ambit of 11 U.S.C. § 523(a)(7), which, as noted above, makes nondischargeable a "fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss." Because the disciplinary costs in this case were discretionary and furthered the purpose of Pennsylvania's discipline system "to protect the public, preserve the integrity of the courts, and deter unethical conduct," Office of Disciplinary Counsel v. Czmus, 889 A.2d 1197, 1203 (Pa. 2005), the district court concluded that the assessment was a nondischargeable "fine, penalty, or forfeiture" under § 523(a)(7). The district court therefore reversed the bankruptcy court on

8

the dischargeability issue and ordered that the Disciplinary Board be granted relief from the automatic stay.  This appeal followed.

## II.  DISCUSSION

Our discussion of Feingold's appeal proceeds in two parts.  First, we must determine whether the Disciplinary Board's judgment against Feingold is nondischargeable pursuant to 11 U.S.C. § 523(a).  Then we must determine whether "cause" for lifting the automatic stay exists with regard to the Disciplinary Board's attempt to collect on its judgment against Feingold. [2]

### A.    Dischargeability of the Debt

Under 11 U.S.C. § 523(a), certain debts are excepted from discharge in bankruptcy proceedings, including any debt "for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, [which] is not compensation for actual pecuniary loss," id. § 523(a)(7).  Section 523(a)(7) applies both to civil and criminal penalties.  See U.S. Dep't of Hous. & Urban Dev. v. Cost Control Mktg. & Sales Mgmt. of Va., Inc., 64 F.3d 920, 927–28 (4th Cir. 1995) (citing Pa. Dep't of Pub. Welfare v. Davenport, 495 U.S. 552, 562, 110 S. Ct. 2126, 2132–33

---

[2]We independently review the bankruptcy court's factual and legal conclusions, employing the same standards of review as the district court.  In re Mitchell, 633 F.3d 1319, 1326 (11th Cir. 2011).  We review the bankruptcy court's factual findings for clear error, and we review the legal conclusions of both the bankruptcy court and the district court de novo.  Id. Additionally, a "decision to lift the stay is discretionary with the bankruptcy judge, and may be reversed only upon a showing of abuse of discretion."  Barclays-Am./Bus. Credit, Inc. v. Radio WBHP, Inc. (In re Dixie Broad., Inc.), 871 F.2d 1023, 1026 (11th Cir. 1989).

9

(1990)).  Here, we agree with the district court, as well as the other courts that have considered this issue, that the debt the Disciplinary Board seeks to collect from Feingold is a debt "for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, [which] is not compensation for actual pecuniary loss," and is therefore nondischargeable under § 523(a)(7).

As an initial matter, the parties do not dispute that the Disciplinary Board is a "governmental unit" within the meaning of § 523(a)(7), or that the debt at issue is payable "to and for the benefit of" the Disciplinary Board.  Therefore, our analysis turns on whether the debt is "a fine, penalty, or forfeiture," and whether it is "compensation for actual pecuniary loss."  We examine each of these questions in turn.

### 1.    Fine, Penalty, or Forfeiture

On appeal, Feingold contends that the Disciplinary Board's judgment for costs and expenses associated with his disciplinary proceedings is not a fine or punitive sanction because (1) Pennsylvania's attorney disciplinary rules do not state that cost awards are intended as a fine, penalty, or forfeiture, and (2) the specific rule providing for cost awards is separate from the rule setting forth the forms of punitive discipline that can be levied against attorneys.  The Pennsylvania disciplinary rule authorizing the assessment of costs and fees against disciplined attorneys, Pennsylvania Rule of Disciplinary Enforcement 208(g)(1), provides that

10

"[t]he Supreme Court in its discretion may direct that the necessary expenses incurred in the investigation and prosecution of a proceeding which results in the imposition of discipline shall be paid by the respondent-attorney."  A separate Rule, Rule 204(a), sets out the types of discipline that may be imposed as a result of an attorney's misconduct, including, inter alia, disbarment, suspension, censure, and probation.  PA. R.D.E. 204(a).

Despite there being no express language in Rule 204 describing the imposition of costs as a "punitive" measure, we are nevertheless persuaded that such cost assessments in attorney disciplinary proceedings are properly viewed as penalties.  Nearly every other court to have considered this issue has concluded that such cost assessments are fines or penalties within the meaning of § 523(a). See Richmond v. N.H. Supreme Court Comm. on Prof'l Conduct, 542 F.3d 913, 919–20 (1st Cir. 2008) (citing Smith v. Attorney Grievance Comm'n (In re Smith), 317 B.R. 302, 313 (Bankr. D. Md. 2004); Supreme Court v. Bertche (In re Bertsche), 261 B.R. 436, 438–39 (Bankr. S.D. Ohio 2000); Carlson v. Attorney Registration & Disciplinary Comm'n (In re Carlson), 202 B.R. 946, 951 (Bankr. N.D. Ill. 1996); State Bar v. Doerr (In re Doerr), 185 B.R. 533, 537 (Bankr. W.D. Mich. 1995); Fla. Bar v. Cillo (In re Cillo), 159 B.R. 340, 343 (Bankr. M.D. Fla. 1993); In re Williams, 158 B.R. 488, 491 (Bankr. D. Idaho 1993); Attorney Registration & Disciplinary Comm'n v. Lewis (In re Lewis), 151 B.R. 200, 203

11

(Bankr. C.D. Ill. 1992); Attorney Registration & Disciplinary Comm'n v. Betts (In re Betts), 149 B.R. 891, 896 (Bankr. N.D. Ill. 1993); Bd. of Attorneys Prof'l Responsibility v. Haberman (In re Haberman), 137 B.R. 292, 295–96 (Bankr. E.D. Wis. 1992)); see also In re Findley, 593 F.3d 1048, 1052–54 (9th Cir. 2010) ("[A]ttorney discipline costs imposed by the California State Bar Court [are] non-dischargeable in bankruptcy pursuant to 11 U.S.C. § 523(a)(7).").

Many of these decisions rely heavily on the Supreme Court's reasoning in Kelly v. Robinson, 479 U.S. 36, 107 S. Ct. 353 (1986), which addressed whether an order to pay restitution entered in a criminal proceeding created a nondischargeable debt under § 523(a)(7). Kelly involved a debtor who attempted to discharge a restitution order entered as a condition of her probation. Id. at 39, 107 S. Ct. at 355. Interpreting § 523(a)(7), the Supreme Court ultimately held that 11 U.S.C. § 523(a)(7) "preserves from discharge any condition a state criminal court imposes as part of a criminal sentence." Id. at 50, 107 S. Ct. at 361. The Supreme Court reasoned that the decision to impose restitution is premised primarily on state penal goals, including retribution and rehabilitation, rather than on obtaining compensation for a crime victim, who has "no control over the amount of restitution awarded or over the decision to award restitution." Id. at 52, 107 S. Ct. at 362. It therefore held that § 523(a)(7) created "a broad exception for

12

all penal sanctions," concluding that restitution orders are sufficiently penal in nature to fall under 11 U.S.C. § 523(a)(7). Id. at 51–53, 107 S. Ct. at 362–63.

The rationale of Kelly extends to cost assessments arising out of attorney disciplinary proceedings. First, although attorney disciplinary proceedings are not criminal in nature, the two types of proceedings share some common goals:

> [t]he ultimate goal of both criminal and attorney disciplinary proceedings is to protect the public. The imposition of sanctions and costs protects the public by restricting a lawyer's right to practice law when warranted. Monetary penalties imposed against the offender, whether part of an attorney disciplinary proceeding or a criminal proceeding, promote the state's penal and rehabilitative interests.

Smith v. Attorney Grievance Comm'n (In re Smith), 317 B.R. 302, 309 (Bankr. D. Md. 2004); see Office of Disciplinary Counsel v. Czmus, 889 A.2d 1197, 1203 (Pa. 2005) ("The primary purpose of our lawyer discipline system in Pennsylvania is to protect the public, preserve the integrity of the courts, and deter unethical conduct." (citing In re Iulo, 766 A.2d 335, 339 (Pa. 2001)); Fla. Bar v. Cillo (In re Cillo), 159 B.R. 340, 343 (Bankr. M.D. Fla. 1993), aff'd, 165 B.R. 46 (M.D. Fla. 1994) ("[T]he ultimate goal of both criminal and attorney disciplinary proceedings is to protect the public. Sanctions imposed against the offender, whether as part of an attorney disciplinary proceeding or a criminal proceeding, promote the state's penal and rehabilitative interests.").

Second, the cost assessment provision in Rule 208(g) is discretionary, rather than mandatory, which further suggests that such assessments should be viewed as

13

penalties.  The Pennsylvania court, in its discretion and in consideration of the circumstances of the particular case before it, may find that the goals furthered by the disciplinary proceedings either do or do not call for the payment of costs by a disciplined attorney.  In this way, the imposition of costs is rolled into the overall sanction imposed against an attorney who engages in misconduct.  By making the imposition of costs discretionary, the Disciplinary Board has permitted them to be used more like a sanction than like the civil litigation analogue of awarding costs to prevailing parties as a matter of course.[3]  See Richmond, 542 F.3d at 919 ("We believe that the cost assessments imposed by the . . . Supreme Court in attorney disciplinary proceedings are not similar to costs awarded to prevailing parties in civil litigation. While the latter are essentially routine, the former are quite discretionary and are intended to sanction attorney misconduct.").

In light of the purposes of Pennsylvania's attorney disciplinary system— deterrence and protection of the public—and the discretionary nature of cost assessments imposed under Rule 208(g), we conclude that the Disciplinary Board's

---

[3]We are not persuaded by the authority cited by Feingold in support of his position that the Disciplinary Board's judgment against him is not a fine or penalty.  As the district court noted, In re Taggart, 249 F.3d 987 (9th Cir. 2001), In re Love, 442 B.R. 868 (Bankr. M.D. Tenn. 2011), and Lufkin v. Bd. of Prof'l Responsibility, 336 S.W.3d 223 (Tenn. 2011), all involved rules mandating that disciplined attorneys pay the costs of their disciplinary proceedings, making the cost assessments in those cases more like the award of costs to prevailing parties in civil litigation and less like penal sanctions imposed for misconduct.

14

judgment against Feingold is effectively a "fine, penalty, or forfeiture" within the meaning of § 523(a)(7).

## 2.    Not Compensation for Actual Pecuniary Loss

As to the "not compensation for actual pecuniary loss" element, we "look to the context in which the penalty [was] imposed to determine whether its purpose is truly compensatory." Richmond, 542 F.3d at 919.  Although Feingold stresses that the amount of the judgment is determined by the costs actually incurred by the Disciplinary Board, and that the Disciplinary Board stated in its motion for relief from the automatic stay that the "monetary component of the [j]udgment was . . . simply designed to reimburse the Board and the Conservator for the costs associated with their many years of litigation against [Feingold]," this does not end our inquiry.

As several other courts have held in examining this element, "[e]ven where a debt is intended to help defray the expense of government, it may not be dischargeable if its primary purpose is penal." Cost Control, 64 F.3d at 928 & n.13 (noting that the "actual pecuniary loss phrase in § 523(a)(7) refers to the government's pecuniary loss"); see In re Smith, 317 B.R. at 312 ("[T]he primary purpose for imposing costs is penal, and not compensatory, in that an attorney's rehabilitation is encouraged through the condition to reinstatement imposed by the judgment.  The mere fact that a penal sanction is calculated by reference to actual

15

costs does not, in and of itself, transform the penalty into compensation for pecuniary loss."). That the cost assessment is determined based on the actual costs incurred by the Disciplinary Board in disciplining Feingold does not automatically transform the judgment into "compensation for actual pecuniary loss." In Kelly, the nondischargeable restitution order was calculated by reference to the victim's actual loss, but this fact was not outcome-determinative. Rather, what matters is the Disciplinary Board's purpose, which as we explained above, is penal in nature.

In addition, it would torture the statutory language and framework to hold that the Disciplinary Board's legal expenditures in furtherance of "its governmental function to pursue disciplinary or remedial actions against attorneys" amounted to an 'actual pecuniary loss.'" In re Smith, 317 B.R. at 312. "The cost of performing such a governmental function is not an actual pecuniary loss to the State" insofar as the Disciplinary Board would perform its public function whether it could recoup the costs associated with it or not. Id.; see Richmond, 542 F.3d at 921 ("Here, the [Disciplinary Board] is not concerned with recouping its litigation costs to the degree that it is concerned with deterring unprofessional conduct.").

In sum, because the Disciplinary Board's judgment against Feingold is in the nature of a "fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, [which] is not compensation for actual pecuniary loss," it is nondischargeable pursuant to 11 U.S.C. § 523(a)(7).

16

**B.      Cause for Lifting the Automatic Stay**

Having determined that the Disciplinary Board's judgment against Feingold creates a nondischargeable debt, we now evaluate whether the debt's nondischargeability suffices as the showing of "cause" necessary for the Disciplinary Board to obtain relief from the automatic stay to enforce its judgment against Feingold.

When a debtor files a bankruptcy petition, an automatic stay applies to the enforcement of a judgment against the debtor or against the property of the estate when that judgment was obtained before the bankruptcy petition was filed.  See 11 U.S.C. § 362(a)(2).  Additionally, the stay applies to any attempt to obtain possession of estate property or exercise control over estate property, as well as to attempts to collect, assess, or recover a claim against the debtor that arose before the bankruptcy case commenced.  Id. § 362(a)(3), (6).  Congress enacted § 362(a) and its subsections "to give debtors 'breathing room' after filing their petition." B.F. Goodrich Emps. Fed. Credit Union v. Patterson (In re Patterson), 967 F.2d 505, 512 n.9 (11th Cir. 1992).  The automatic stay is "one of the fundamental debtor protections provided by the bankruptcy laws," which "permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy."  Id.

17

Section 362(b) lists certain enumerated exceptions to the automatic stay. For example, the automatic stay provisions of § 362(a) do not apply to "the enforcement of a judgment[,] other than a money judgment, obtained in an action or proceeding by [a] governmental unit to enforce such governmental unit's or organization's police or regulatory power."  11 U.S.C. § 362(b)(4).[4]  Certain attempts to collect on child support or alimony obligations are likewise exempt from the automatic stay.  Id. § 362(b)(2).

In addition to the enumerated exceptions listed in § 362(b), the bankruptcy court may also grant relief from the automatic stay, "such as by terminating, annulling, modifying, or conditioning such stay," on "request of a party in interest . . . for cause, including the lack of adequate protection of an interest in property of such party in interest."  Id. § 362(d)(1) (emphasis added).  The term "cause" is not defined in § 362(d)(1) or elsewhere in the Bankruptcy Code.  See Baldino v. Wilson (In re Wilson), 116 F.3d 87, 90 (3d Cir. 1997) ("Section 362(d)(1) does not define 'cause,' leaving courts to consider what constitutes cause based on the totality of the circumstances in each particular case."); Laguna Assocs. Ltd. P'ship

---

[4]We note here that on appeal the Disciplinary Board has abandoned its argument that the judgment against Feingold falls within the § 362(b)(4) exception to the automatic stay.  This exception is applicable to "the enforcement of a judgment[,] other than a money judgment, obtained in an action or proceeding by [a] governmental unit to enforce such governmental unit's or organization's police or regulatory power."  11 U.S.C. § 362(b)(4).  Even if not abandoned, this argument is without merit, insofar as the exception by its plain language is inapplicable to money judgments, and the portion of the judgment at issue in this appeal is a money judgment.

18

v. Aetna Cas. & Sur. Co. (In re Laguna Assocs.), 30 F.3d 734, 737 (6th Cir. 1994) ("Because the [Bankruptcy] Code provides no definition of what constitutes 'cause' . . . courts must determine whether discretionary relief is appropriate on a case-by-case basis.").

There is no set list of circumstances that a bankruptcy court is required to consider in evaluating whether § 362(d)(1) "cause" exists to lift the automatic stay. Rather, courts evaluating whether to grant stay relief have looked to a variety of case-specific factors, including (1) whether the debtor has acted in bad faith, see Barclays-Am./Bus. Credit, Inc. v. Radio WBHP, Inc. (In re Dixie Broad., Inc.), 871 F.2d 1023, 1026 (11th Cir. 1989); (2) the "hardships imposed on the parties with an eye towards the overall goals of the Bankruptcy Code," see In re C & S Grain Co., 47 F.3d 233, 238 (7th Cir. 1995); and (3) pending state court proceedings, see In re Wilson, 116 F.3d at 90.  See also In re Brown, 311 B.R. 409, 412–13 (E.D. Pa. 2004) ("A court may consider the policies reflected in the bankruptcy code, and the interests of the debtor, other creditors and any other interested parties. Unsecured creditors are generally entitled to relief from an automatic stay only in extraordinary circumstances."); Milne v. Johnson (In re Milne), 185 B.R. 280, 283 (N.D. Ill. 1995) ("Factors generally looked to in determining whether to modify the stay for cause include interference with the bankruptcy, good or bad faith of the debtor, injury to the debtor and other creditors

19

if the stay is modified, injury to the movant if the stay is not modified, and the proportionality of the harms from modifying or continuing the stay.").

Here, the district court focused solely on the debt's dischargeability—presuming that a nondischargeable debt was per se sufficient to establish "cause" to provide the Disciplinary Board relief from the automatic stay. Although we have not addressed the issue previously, a majority of courts that have ruled on the question have concluded that a debt's nondischargeability, standing alone, does not constitute "cause" justifying relief from the automatic stay. See In re Mu'min, 374 B.R. 149, 161–62 (Bankr. E.D. Pa. 2007) ("[T]he automatic stay remains in effect, irrespective of a determination of dischargeability. . . . [I]f the stay did not apply to a creditor who obtained a favorable judgment under § 523, such creditor would get a head start on collection—precisely what the Bankruptcy Code was designed to prevent so that creditors could share equally in the distribution of available assets."); In re Daniels, 316 B.R. 342, 354 (Bankr. D. Idaho 2004) ("[P]rior to the entry of a discharge, even creditors holding nondischargeable debts are prohibited by the automatic stay from resorting to judicial proceedings to collect."); In re Weatherly, 169 B.R. 555, 561–62 (Bankr. E.D. Pa. 1994) ("[S]imply because the Debtor's indebtedness to the IRS is nondischargeable does not automatically compel relief from the stay in the IRS's favor. . . . Of course, the IRS may be entitled to relief from the automatic stay to proceed to levy against a taxpayer-

20

debtor's property where it presents evidence that it meets the requirements of 11 U.S.C. §§ 362(d)(1) or 362(d)(2)."); In re Miller, 98 B.R. 110, 113 (Bankr. N.D. Ga. 1989) ("The stay is applicable to all claims, even nondischargeable and priority claims, unless excepted by § 362(b).").

We agree with these courts that nondischargeability alone cannot supply the cause contemplated by § 362(d)(1), otherwise the statutory automatic exceptions for the enumerated nondischargeable debts—like domestic support obligations—found in § 362(b) would be meaningless. In re Mu'min, 374 B.R. at 161 ("[T]he conscious decision of Congress to make an express exception for one nondischargeable debt implies that Congress intended that collection of other nondischargeable debts be subject to the automatic stay." (internal quotation marks omitted)); see Tug Allie-B, Inc. v. United States, 273 F.3d 936, 944 (11th Cir. 2001) (noting that "[w]here Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent" (alteration in original) (internal quotation marks omitted)). This is not to say that nondischargeability cannot be a factor, or even a weighty factor, in a bankruptcy court's evaluation of "cause," but the Disciplinary Board's possession of a nondischargeable judgment against Feingold, without more, is insufficient to warrant relief from the automatic stay.

21

Here, the bankruptcy court, in its order denying the Disciplinary Board relief from the automatic stay, erroneously concluded that the Disciplinary Board's judgment against Feingold was dischargeable, and thus, it denied the Disciplinary Board relief from the automatic stay. The district court likewise focused on this same dischargeability issue, and although it correctly concluded that the debt is nondischargeable, it erred by focusing solely on that factor, to the exclusion of other potentially relevant circumstances. See In re Dixie Broad., Inc., 871 F.2d at 1026.

## III.  CONCLUSION

Because the debt's nondischargeability in this case did not settle the question of whether the Disciplinary Board was entitled to relief from the automatic stay, the bankruptcy court should have looked to the totality of the circumstances in Feingold's case to determine whether stay relief was warranted.  However, the parties, the bankruptcy court, and the district court all stopped short in their analysis of this issue, and the record before us on appeal does not permit us to conduct such a fact- and case-specific inquiry that has not been briefed by the parties.

Consequently, although we affirm the district court's order insofar as it reverses the bankruptcy court and holds that the Disciplinary Board's judgment against Feingold is a nondischargeable "fine, penalty, or forfeiture," we vacate the

22

order insofar as it grants the Disciplinary Board relief from the automatic stay.  We remand this case to the district court with instruction to remand it to the bankruptcy court for the purpose of evaluating, under the totality of the circumstances, whether the Board is entitled to relief from the automatic stay as to the nondischargeable debt at issue here.

**AFFIRMED IN PART, VACATED AND REMANDED IN PART.**